HANOVER INSURANCE COMPANY *vs.* ERIC PASCAR.

Plymouth. November 6, 1995. - December 6, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, O'CONNOR, & GREANEY, JJ.

*Insurance*, Motor vehicle insurance, Underinsured motorist. *Statute*, Construction.

This court held that under a reasonable interpretation of G. L. c. 175, § 113L (2), as amended by St. 1988, c. 273, § 46, and of the provisions of Part 12 of the fifth edition standard motor vehicle liability insurance policy, in light of the clarifying language of the same provision in the sixth edition, underinsurance benefits were not available to a household member, a passenger injured in a two-car collision, where the combined per person limits of the two tortfeasors' coverages exceeded the insured's underinsurance coverage limit. [443-447]

CIVIL ACTION commenced in the Superior Court Department on February 4, 1994.

The case was heard by *Richard S. Kelley*, J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*Peter E. Heppner* (*Stephen M.A. Woodworth* with him) for the plaintiff.

*Michael J. Underhill* for the defendant.

GREANEY, J. The plaintiff, Hanover Insurance Company (Hanover), brought a complaint in the Superior Court seeking a declaration pursuant to G. L. c. 231A (1994 ed.), that it was not obligated to pay underinsured motorist benefits to the defendant, Eric Pascar. A judge in the Superior Court considered the case on cross motions for summary judgment, see Mass. R. Civ. P. 56 (a) and (b), 365 Mass. 824 (1974), based on a statement of agreed facts and exhibits. The judge denied Hanover's motion and allowed Pascar's motion. In so

ruling, the judge rejected Hanover's position that the under-insurance coverage of its policy was not triggered because the limits of that coverage did not exceed the sum of the per person bodily injury liability limits of the policies of the two other responsible tortfeasors. Hanover appealed from the judgment which declared that Pascar could pursue his claim for underinsured motorist benefits against Hanover. We granted Hanover's application for direct appellate review. We now vacate the judgment and direct the entry of a judgment favoring Hanover.

The statement of agreed facts and exhibits indicate as follows. On October 4, 1991, Pascar was a passenger in an automobile driven by Joseph Cannon when the automobile was involved in a multi-vehicle accident. It was agreed that Cannon, and the driver of a second vehicle, Philip Miceli, were responsible, as joint tortfeasors, for Pascar's injuries. Both Cannon and Miceli carried liability insurance on their vehicles which provided bodily injury coverage in the amount of $15,000 per person and $30,000 per accident. Hanover insured Pascar's mother in a policy which provided underinsured motorist coverage of $25,000 per person and $50,000 per accident.[1]

Pascar settled his claims against Cannon and Miceli for $8,000 ($4,000 was paid by each tortfeasor's insurer).[2] Pascar then made a claim against Hanover for underinsurance benefits.[3] Pascar maintained that, under G. L. c. 175, § 113L

---

[1]Hanover agreed, solely for purposes of the summary judgment motions, that Pascar was a member of his mother's household and that he was eligible on this basis to make a claim for underinsurance benefits on Hanover's policy.

[2]Each of these insurers paid the full $30,000 per accident limit of its policy which was divided among all the claimants who were injured in the multi-vehicle accident giving rise to Pascar's claim.

[3]The record is silent on the extent of the damages sustained by Pascar.

(2), as amended by St. 1988, c. 273, § 46, set forth below,[4] and the provisions of Part 12 of the fifth edition standard motor vehicle liability insurance policy, also set forth below,[5] Hanover's underinsurance coverage was triggered because the limit of each single tortfeasor's liability coverage ($15,000 per person) was less than the limit of underinsurance coverage in Hanover's policy ($25,000). Hanover

---

[4]This statute, which describes underinsured motor vehicle coverage as an aspect of uninsured motor vehicle coverage, reads, in pertinent part, as follows:

"For the purpose of said coverage, if the policyholder or obligor elects to purchase the coverage described in this paragraph, the term "uninsured motor vehicle" shall also include protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles, trailer or semitrailers, to which a bodily injury liability bond or policy applied at the time of the accident and its bodily injury liability bond amount or policy limit is less than the policy limit for uninsured motor vehicle coverage and is insufficient to satisfy the damages of persons insured thereunder and only to the extent that the uninsured motor vehicle coverage limits exceed said limits of bodily injury liability subject to the terms of the policy . . . ."

[5] "Sometimes an owner or operator of an auto legally responsible for an accident is underinsured. Under this Part [bodily injury caused by an underinsured auto], we will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance.

"We will only pay if the injured person is legally entitled to recover from the owner or operator of the underinsured auto. An auto is underinsured when the limits of automobile bodily injury liability insurance covering the owner and operator of the auto are:

"1. Less than the limits shown for this Part on your Coverage Selections Page; and

"2. Not sufficient to pay for the damages sustained by the injured person.

"When an auto is underinsured, we will pay any unpaid damages up to the difference between the total amount collected from the automobile bodily injury liability insurance covering the owner and operator of the auto and the limits shown for this Part on your Coverage Selections Page."

The language in the standard motor vehicle liability insurance policy is established by the Commissioner of Insurance. See *Liberty Mut. Ins. Co.* v. *Commissioner of Ins.*, 395 Mass. 765, 766 (1985).

maintained that, under the statute and the policy language, reasonably interpreted, particularly in light of the provisions of Part 12 of the sixth edition standard motor vehicle liability policy set forth below[6] (which became effective on January 1, 1993, after the accident in this case), underinsurance benefits were not available because the combined per person limits of the two tortfeasors' coverages ($30,000) exceeded Hanover's limit on underinsurance coverage ($25,000).

We agree with Hanover's position. The applicable statute, G. L. c. 175, § 113L (2), as amended by St. 1988, c. 273, § 46, see note 4, *supra*, does not precisely deal with the question whether a claim may be made against underinsurance coverage when the accident involves multiple joint tortfeasors with combined coverages in excess of the underinsurance limit. The pertinent language in Part 12 of the fifth edition standard motor vehicle liability insurance policy on underinsurance, see note 5, *supra*, also does not completely address the issue. We are obliged, however, to deal with any imprecision in the statutory scheme by giving G. L. c. 175, § 113L (2), as amended, a reasonable construction, see *Massachusetts Comm'n Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 190 (1976), which promotes the remedial purposes of the legislation describing the trigger for underinsurance coverage. See *Glasser* v. *Director of the Div. of Employment Sec.*, 393 Mass. 574, 577 (1984).

The underinsurance legislation and the component statutory provision we are concerned with are remedial in nature and expressly intended to restructure the automobile liability insurance system in a way which lowers rates to the consum-

---

[6]"We will only pay if the injured person is legally entitled to recover from the owners or the operators of all underinsured autos. Such injured person has a claim under this Part when the limits for automobile bodily injury liability insurance covering the owners and operators of the legally responsible autos are:

"1. Less than the limits shown for this Part on your Coverage Selection Page; and

"2. Not sufficient to pay for the damages sustained by the injured person."

ing public while continuing to provide reduced, but effective, levels of coverage. See St. 1988, c. 273, § 1; *Massachusetts Auto Body Ass'n* v. *Commissioner of Ins.*, 409 Mass. 770, 772 (1991). The legislation seeks to limit significantly claims on underinsurance coverage by establishing a trigger to coverage which did not previously exist. The Legislature contemplated an over-all provision reduction rate of 2% from the adoption of the trigger alone. See St. 1988, c. 273, § 1.

Thus, G. L. c. 175, § 113L (2), as amended, speaks in terms of underinsurance coverage being available "only to the extent that the [underinsured] motor vehicle coverage limits exceed . . . limits of bodily injury liability [coverage] . . . ." This language expresses a legislative intent that underinsured motorist benefits are not available if the limits of that coverage are less than the bodily injury coverage available to the injured party from the primary liability policies which insured the joint tortfeasors in this case. This intention would be defeated by the construction suggested by Pascar.

We also think the commissioner's clarification of the issue in the revised language in Part 12 of the sixth edition of the standard motor vehicle liability insurance policy is consistent with his power to express the scope of insurance coverage when statutory purpose is apparent, but a technical application of the statute exposes a gap or previously unconsidered point. The commissioner's action in resolving the problem supports the conclusion we have reached based on the intent expressed in G. L. c. 175, § 113L (2). See *Cleary* v. *Cardullo's, Inc.*, 347 Mass. 337, 344 (1964) (under ambiguous statute, details of legislative policy not spelled out in statute may appropriately be determined by agency charged with administration of statute).

We note as well that cases from other jurisdictions which have considered this issue (and which also have construed an insurance policy or a statute written in the singular) have concluded that the sum of the personal injury liability limits of separate policies insuring joint tortfeasors should be considered for the purpose of deciding whether underinsured coverage will be available to an injured insured. See *Allstate*

*Ins. Co.* v. *Hilbun,* 703 F. Supp. 533, 536-538 (S.D. Miss. 1988) (applying Mississippi law); *Pinto* v. *Garretson,* 237 N.J. Super. 444, 450-451 (1989).

The judgment is vacated. A new judgment is to enter declaring that the plaintiff, Hanover Insurance Company, has no obligation to furnish "underinsured motorist benefits" to the defendant, Eric Pascar.[7]

*So ordered.*

---

[7]Hanover is not entitled to a broader declaration than the one sought in the Superior Court which concerned only the applicability of underinsurance coverage without regard to excess or umbrella policies.