CALIFORNIA PLANT PROTECTION, INC. *vs.* ZAYRE
CORPORATION & others.[1]

No. 94-P-486.

Middlesex. November 6, 1995. - January 22, 1996.

Present: BROWN, GILLERMAN, & LENK, JJ.

*Massachusetts Insurers Insolvency Fund. Insurance*, Liability insurance.
*Indemnity. Words*, "Insurer."

A corporation providing guard services to retail establishments that was
self-insured to certain limits under a policy of general liability insur-
ance was not an "insurer" within the meaning of G. L. c. 175D, § 5
(1), and thus was entitled to seek indemnification from a retailer (to
whom it had supplied services) as the insured of an insolvent insurer
and payment from the Massachusetts Insurers Insolvency Fund to the
extent of its uninsured losses. [630-632]

CIVIL ACTION commenced in the Superior Court Depart-
ment on April 13, 1987.

The case was heard by *Vieri Guy Volterra*, J., on motions
for summary judgment.

*Daniel R. Deutsch* for the plaintiff.

*Andre A. Sansoucy* for the defendants.

*Joseph C. Tanski & Joseph C. Marrow* for Massachusetts
Insurers Insolvency Fund, amicus curiae, submitted a brief.

GILLERMAN, J. This appeal has to do with the statute cre-
ating and regulating the Massachusetts Insurers Insolvency
Fund (the Fund),[2] G. L. c. 175D. The case comes to us on

---

[1] Zayre Corp. and TJX Companies, Inc. The appellant California Plant
Protection, Inc., is the defendant, third-party plaintiff, and cross appellee;
the appellees are the third-party defendants and cross appellants. Zayre
Corp. changed its name to T.J.X. Companies, Inc., following a reorgan-
ization.

[2] We acknowledge, with appreciation, the amicus curiae brief filed by the
Fund.

cross motions for summary judgment on the third-party complaint of California Plant Protection, Inc. (CPP), against the third-party defendants, see note 1, *supra* (collectively TJX); the judge of the Superior Court allowed the motion of TJX and denied the motion of CPP. Both parties appealed from the final judgment. We vacate the judgment and remand the case to the Superior Court.

The undisputed, material facts are these. In 1987, Michael and Rita Durand brought a personal injury action against CPP, a California corporation.[3] CPP provided guard services to Durand's employer, Zayre Corp. (Zayre), pursuant to a written agreement (the contract) under the terms of which (i) the parties acknowledged that CPP was not an insurer and that CPP did not guarantee no losses would occur, and (ii) Zayre agreed to "indemnify and hold CPP harmless from any loss, claim, demand, liability, cause of action or judgment, whether or not well grounded, and whether or not any negligence, misconduct or breach of duty by CPP's agents, servants, employees of [*sic*] personnel is alleged to have contributed thereto, in whole or in part."

CPP filed a third-party complaint against Zayre seeking indemnification under the contract. At the time of Durand's injuries Zayre's general liability insurer was American Mutual Liability Insurance Company of Wakefield (American Mutual), which was adjudged insolvent on March 9, 1991. CPP owned and was a named insured in a general liability insurance policy issued by Allianz Underwriters Insurance Company of Los Angeles, California (AUIC).[4]

By letter agreement dated June 5, 1984, CPP and its insurer, AUIC, agreed that claims under the policy were "to be handled as if the policy had been written on a formal self-insured basis." This meant that the policy was subject to "deductible amounts of $100,000 per occurrence . . . [and]

---

[3]Durand alleged that a CPP employee negligently allowed an electronically operated door to open without warning, and that Durand was injured when he tried to avoid the door.

[4]AUIC was licensed to transact business in California; it was not licensed in Massachusetts.

$250,000 annual aggregate [and] these deductibles shall function as *self-insured retained limits* for the purposes of this insurance and no coverage shall apply under the policy unless and until any loss shall exceed $100,000 per occurrence/$250,000 annual aggregate" (emphasis added). Under this arrangement (unlike the more familiar deductible arrangements), AUIC was not obligated to bear any expense of investigation, defense, or settlement of any suit unless and until the amounts paid exceeded the $100,000 per occurrence or the $250,000 annual aggregate retention.

By an addendum to its brief (and not disputed in the reply brief of CPP), TJX brings to our attention that the Durands have settled their claim against CPP for the sum of $120,000, subject to court approval. See G. L. c. 152, § 15. The docket sheet further discloses that the settlement was approved December 28, 1993. Thus, CPP seeks recovery to the extent of its retention of $100,000, while TJX argues — and the judge agreed — that CPP is barred from any recovery by reason of G. L. c. 175D.[5]

*Discussion.* CPP has an indemnity claim against Zayre which has not been paid and which is within the coverage of a liability policy issued by a now insolvent insurer.[6] Whether CPP is entitled to the payment of its claim, or any part

---

[5]TJX states in its brief that at the hearing on the cross motions for summary judgment, "CPP asserted that it could not determine at that time whether its self-insured retention had been exhausted." CPP in its brief cites to a letter dated December 9, 1992, appearing in the appendix, from counsel to CPP to counsel for TJX in which it is stated that "the retentions have not been exhausted." The docket entries state that the hearing occurred sometime between April and December, 1993. While there may be a disputed question of fact as to whether CPP's retention is exhausted, that issue is not decisive of this appeal. See note 9, *infra.*

[6]There is no dispute that CPP's indemnity claim, if valid, falls within the coverage of Zayre's liability policy with the insolvent insurer, American Mutual. TJX argues that the claim asserted by Michael and Rita Durand does not fall within the indemnity clause in the contract between CPP and Zayre because the claim does not arise out of a theft. We have considered the argument advanced in support of that position and conclude that the argument has no merit. The indemnity clause at issue (which we have quoted in the text of this opinion) is without limitation, and covers the Durand claim. The point need not be discussed in any further detail.

thereof, turns on the construction to be put upon the relevant provisions of G. L. c. 175D.

The Fund is required to pay "covered claims," G. L. c. 175D, § 5(1) (a), of American Mutual's insured, except that the Fund is not obligated to pay any amount due an "insurer," see § 1(2) ("covered claim" does not include an amount due an insurer) and § 1(5) (defining "insurer"). If CPP is a defined "insurer," Zayre, as the insured of an insolvent insurer, is also immune from liability for such payment. See the proviso in § 1(2), second par. ("in no event may any such claim [against an insolvent insurer] be asserted against the insured of . . . [an] insolvent insurer").

The critical issue, then, is whether CPP is an "insurer" within the meaning of G. L. c. 175D. If it is, it may not proceed against TJX as the insured of an insolvent insurer. Otherwise, the Fund will be required to pay CPP to the extent of the Fund's liability for such payment. G. L. c. 175D, § 5(1).

CPP does not fall within the explicit statutory definition of "insurer." CPP does not "(a) write[ ] any kind of insurance to which . . . [c. 175D] applies. . . , and (b) [CPP] is not licensed to transact insurance in the commonwealth." G. L. c. 175D, § 1(5). CPP may still be a statutory insurer if "the context [in which the term 'insurer' is used in c. 175D] clearly requires otherwise." See § 1, first par; *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483, 485 (1980), *S.C.*, 383 Mass. 36 (1981). However, this expansion of the explicit definition of "insurer" may occur "only when, and to the extent that, the context of the statute clearly requires such expansion in order that the statute be internally consistent and consistent with the obvious legislative objective in enacting it." *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, 418 Mass. 486, 489 (1994).

*Ulwick* provides considerable assistance in deciding whether CPP is a statutory "insurer" under an expanded definition of that term. There, the city of Melrose paid the lost wages of an injured police officer, Wayne R. Ulwick, as it was obliged to do under G. L. c. 41, § 111F (1992 ed.).

Ulwick brought suit against the owner and driver of the motor vehicle which injured him; that vehicle was insured by American Mutual Insurance Company, which subsequently was adjudicated insolvent. The Fund argued that if the Fund were required to pay Ulwick, Melrose would be entitled to that money under G. L. c. 41, §§ 100 and 111F. In these circumstances, the Fund argued that Melrose was an insurer. The court, as a preliminary matter, observed that the "obvious legislative purpose in establishing the Fund, which is funded by the insurance industry, is to benefit members of the public, individuals and entities, including municipal employers like Melrose, *which are outside the insurance industry*, from losses due to the insolvency of a member of that industry." *Id.* at 490-491 (emphasis added). On that basis, the court held that Melrose was not an insurer, and Ulwick's claim was not for a sum due an insurer. Compare *Ferrari*, *supra*, where this court said that "segments of the insurance industry," *id.* at 485-486, that are not members of the Fund, may nevertheless be insurers within the meaning of c. 175D because that would preclude "shuffling of funds among insurance companies." *Id.* at 485.

To permit CPP to recover up to $100,000 (its retention) would not result in the "shuffling of funds among insurance companies." Nor would it result in a payment to a member or segment of the insurance industry. CPP is in the business of providing guard service and is "outside the insurance industry." Members of the industry are those who are in the *business* of insurance.[7] The business of a member of the industry is "subject to a large degree of legislative regulation." *Attorney Gen.* v. *Prudential Ins. Co.*, 310 Mass. 762, 765 (1942). CPP's private decision not to insure certain risks is not subject to legislative regulation and affects no one but itself. The claim that CPP is a "self-insurer," and therefore

---

[7]The dissent in *Ulwick* emphasizes that Melrose "assumes the role of an insurer." That is to say, Melrose, on a continuing basis, must grant leave without loss of pay to its police officers and fire fighters who, without fault, are incapacitated for duty. G. L. c. 41, § 111F. Here, CPP does not indemnify, or otherwise act as an insurer with regard to any third party.

is a member of the insurance industry (as TJX and the Fund argue in substance) is not persuasive. To characterize a company (or an individual) which is either not insured, or only partly insured, as being "self-insured" is merely a manner of speaking. "Self-insurance" is neither a business nor a business transaction. It is a shorthand business expression which refers to a financial decision *not* to be insured — a decision that may be prompted as much by a shortage of funds as it is by shrewdness or self-confidence.

The purpose of the Fund is to benefit members of the public who are "outside the insurance industry." That purpose will not be served by foreclosing access to the Fund to all those who in their business affairs or personal life are outside the insurance industry and who, for business or personal reasons, do not or cannot purchase insurance to the full extent of insurable values. In sum, the private decision not to insure neither propels one into the insurance industry nor transforms one into an "insurer" for the purposes of G. L. c. 175D, § 5(1).[8]

Accordingly, we vacate the judge's rulings on the parties' cross motions for summary judgment and remand the case to the Superior Court for further proceedings. Additional issues may arise in those proceedings as a full record of the facts is developed.[9] We express no opinion as to those issues.

---

[8]TJX has brought to our attention cases in other jurisdictions which have concluded that self-insurers are not insurers for purposes of an insurance insolvency statute. See *Stamp* v. *Department of Labor & Indus.*, 122 Wash. 2d 536, (1993); *Iowa Contractors Workers' Compensation Group* v. *Iowa Ins. Guar. Assn.*, 437 N.W.2d 909 (Iowa 1989); *Zinke-Smith Inc.* v. *Florida Ins. Guar. Assn.*, 304 So. 2d 507 (Fla. Dist. Ct. App. 1974). TJX distinguishes the cases just cited, and argues in this case that a self-insured entity is seeking to pass on its own liability "*as a tortfeasor.*" We have read the complaint. The liability asserted against CPP was merely vicarious liability arising out of the employment relationship. See note 3, *supra.* That does not provide a sufficient basis either for distinguishing the cited cases, or for reaching a result favorable to TJX.

[9]For example, TJX's brief suggests that *if* CPP's $250,000 annual aggregate has been eroded as a result of CPP's payment of other claims, Allianz may have an obligation to make payments in settling and defending the Durand claim, and a payment by the Fund in those circumstances may benefit Allianz. See also note 5, *supra.*

The orders on cross motions for summary judgment, and the resulting judgment, are vacated. The case is remanded to the Superior Court for further proceedings.

*So ordered.*