Toomey, J.
This action was originally filed against the John Hancock Insurance Co. (“John Hancock”) *138 alleging breach of contract and violation of G.L.c. 93A. The complaint was subsequently amended to include the Group Insurance Commission, a Commission established by statute to administer insurance policies for the employees of the Commonwealth. G.L.c. 32A, §1 et seq. The matter is presently before the court on defendant, Group Insurance Commission’s, motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(1) and (6). For the following reasons, defendant’s motion is DENIED.
Background
Plaintiff, Marilyn L. Zoppo,. is an employee of the Commonwealth. The Group Insurance Commission (“GIC”) was established by G.L.c. 32A as an unpaid commission to purchase and administer group health, life, disability and accidental death insurance for certain employees of the Commonwealth as well as their dependents. G.L.c. 32A, §1. As the spouse of Marilyn L. Zoppo, Robert J. Zoppo is insured under a plan established by the GIC. The plan is a self-insurance plan, the “State Hancock Plan,” and is administered by John Hancock pursuant to a contract between John Hancock and the GIC. G.L.c. 32A, §4A.
On April 12, 1995, Mr. Zoppo submitted a request for pre-determination regarding coverage for lower-back surgery which he was scheduled to have on April 26, 1995. On April 19, 1995, John Hancock informed Mr. Zoppo that coverage for his potential claim had been denied. That same day, Mr. Zoppo requested reconsideration of that decision. Following review of the case by a John Hancock physician, the decision to deny coverage for the surgery on the grounds that it was not necessary[3] was reaffirmed on April 26. Mr. Zoppo proceeded to have the surgery despite this determination.
Mr. Zoppo again submitted a request for reconsideration on May 16, 1995 and, following review of the case by another John Hancock physician, coverage was again denied. Mr. Zoppo proceeded to appeal the case to the GIC, pursuant to 805 C.M.R. §9.74, which affirmed the decision made by John Hancock on September 19, 1995. This case was then initiated in the Superior Court on December 27, 1995.
Discussion
When evaluating the sufficiency of a complaint pursuant to Mass.R.Civ.P. 12(b)(6), this court accepts as true the well pleaded factual allegations of the complaint, as well as any reasonable inferences that can be drawn therefrom in the plaintiffs’ favor. Eyal v. Helen Broadcasting Corp., 411 Mass. 426, 429 (1991), and cases cited. The complaint will not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief. Nader v. Citron, 372 Mass. 96, 98 (1977), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957).
I. Judicial Review of GIC Determinations.
The GIC’s authority and powers are provided by G.L.c. 32Aand 805 C.M.R. G.L.c. 32Adoes not contain a statutorily mandated method for review of coverage determinations, but the applicable regulations do address the review process. 805 C.M.R. §3:05(5) recites that the GIC has “the power to determine the amounts and extent of hospital, surgical, and medical coverage and the amount and extent of health maintenance organization coverage to be provided to persons enrolled for such coverage.” The regulation also provides that “(a]ny person who is aggrieved by a . . . final decision of one of the Commission’s vendors” denying payment of a claim may appeal that determination to the Appeals Committee of the GIC. 805 C.M.R. §9.74. Any decision issued by the Appeals Committee is binding upon the vendor. Id. No other provision for appellate review, administrative or judicial, is contained in either the statutes or the regulations.
The GIC argues that, plaintiffs’ having exhausted the procedures contained in the regulations, judicial review is available to them only by way of a writ of certiorari under G.L.c.249, §4. The writ of certiorari is a civil action employed to review the proceedings of a judicial or quasi-judicial tribunal which are not otherwise reviewable. See Whitney v. Judge of District Court of Northern Berkshire, 271 Mass. 448, 458-59 (1930). The writ has been used to review the quasi-judicial actions of administrative agencies when no other remedy was provided by statute for judicial review of the action. Lucia v. Water and Sewer Commissioners of Medford, 332 Mass. 468 (1955). Therefore, the writ of certiorari is not an appropriate action if the administrative action for which review is sought is not quasi-judicial in nature. Town of Warren v. Hazardous Waste Facility Site Safety Council, 392 Mass. 107 (1984) (decision to appropriate properly for public use not judicial or quasi-judicial so not subject to review under writ of certiorari); Reidy v. Acting Director of Civil Service, 354 Mass. 760 (1968) (appointments made following examination were administrative, not quasi-judicial, so certiorari would not lie). The GIC’s action in denying coverage to Mr. Zoppo’s claim was a discretionary administrative action. The GIC is empowered to “determine the amount and extent of. . . coverage” and that decision is not made in a quasi-judicial manner. There is no hearing or trial type inquiry conducted prior to the coverage decision. The GIC, and its plan administrator (in this case John Hancock), merely review the file and the attending physician’s assessment prior to making a determination as to whether or not coverage will be extended to the insured’s claim. Consequently, a writ of certiorari is not the appropriate vehicle for review in this case. Hootstein v. Coxe, 5 Mass. L. Rptr. No. 27, 620, 621 (October 7, 1996).
The plaintiffs are not without remedy, however. They have the right, pursuant to G.L.c. 258, §1, to *139 bring a contract claim against the Commonwealth. J.A. Sullivan Corp. v. Commonwealth, 397 Mass. 789, 793 (1986); Monadnock Display Fireworks, Inc. v. Andover, 388 Mass. 153, 156 (1983). The insurance policy between the plaintiffs and the GIC is a contract. The plaintiffs have alleged with specificity that the GIC’s denial of coverage breaches that contract. As the court has the jurisdiction to hear their claim, and the complaint has asserted a claim upon which relief can be granted, the GIC’s motion to dismiss the contract count against it is denied. See Wetherell v. Boston Mutual Life Ins. Co., 18 Mass.App.Ct. 614, 616-17 (1984) (plaintiff brought action against the GIC alleging breach of contract for failure to pay out life insurance benefits).
II. Applicability of G.L.c. 93A.[4]
Chapter 93A, §2, of the General Laws proscribes unfair or deceptive acts or practices in the conduct of any trade or commerce. The statute applies to those acts or practices that are perpetrated in a business context. Poznik v. Massachusetts Medical Professional Insurance Association, 417 Mass. 48, 52 (1994); Barrett v. Massachusetts Insurers Insolvency Fund, 412 Mass. 774, 775 (1992). To determine whether a particular transaction has occurred in a business context, a court must consider the character of the party, the nature of the transaction, the activities engaged in by the party, and whether the transaction was motivated by business or personal reasons. Poznik, 417 Mass. at 52; Barrett, 412 Mass. at 775-76.
Chapter 32A of the General Laws was enacted in 1955 to provide group insurance benefits to eligible employees of the Commonwealth and their dependents. The GIC is the product of that statute and is empowered by it to contract with insurance providers for the purchase of policies or, if the GIC chooses, to contract with a company to administer a plan of self-insurance. G.L.c. 32A, §§4, 4A.[5] Having elected to proceed under the latter alternative, the GIC has, in the view of this court, exposed itself to G.L.c. 93A treatment.
The Massachusetts Supreme Judicial Court has held that certain statutorily established associations (the MMPIA and the MIIF) are not susceptible to suit under G.L.c. 93A. See Poznik, 417 Mass. at 52, and Barrett, 412 Mass. at 776. At first glance, it might seem that the GIC is kin to the associations thus shielded from the operation of G.L.c. 93A and ought also to be immune from its proscriptions. The character of the GIC, as a self-insurer, is, however, sufficiently dissimilar to that of the associations addressed in Poznik and Barrett to warrant a different result.
In Poznik, the Court considered certain factors in determining that the MMPIA was not engaged in the “business of insurance” and in “trade or commerce,” and thus was not subject to liability under G.L.cc. 176D and 93A. The MMPIA is “empowered to issue policies of insurance, underwrite the insurance, collect premiums, adjust claims, and pay losses.” Poznik, 417 Mass. at 48. The MMPIA can have no private profit and assumes no risk of loss. Id. at 51. “Any revenue received by the MMPIA which exceeds liabilities and expenses must be returned to its policyholders or held as reserves to cover future liabilities.” Id. Further, “unlike a private insurer,” the MMPIA assumes no risk of loss because “if [it] operates at a deficit, it may seek to recover from ‘all licensed physicians or hospitals insured under a policy of medical malpractice insurance, whether obtained through the [MMPIA] or not.” Id., citing St. 1975, c. 362, §6.
Similarly, the member insurers of the MIIF can have no private profit and assume no risk of loss. The rates and premiums charged for insurance policies must be sufficient to cover the net amounts paid by the insurers to the Fund. G.L.c. 175D, §13. The member insurers may have returned to them “the amount by which the assets of the fund exceed the liabilities in proportion to the contribution of each insurer to the Fund.” G.L.c. 175D, §12. This, however, is no more than a return of over-assessed amounts necessary to pay the “covered claims” of insolvent insurers, see G.L.c. 175D, §5(c), and must be deducted from future costs passed along to all policy holders. G.L.c. 175C, §3. Finally, no premiums or consideration are paid directly by insureds of insolvent insurers for the MIIF’s services. Barrett, 412 Mass. at 777.
The very factors which persuaded the Poznik and Barrett courts that the associations there under scrutiny were not within the ambit of G.L.c. 93A are not present in the GIC’s construct. Poznik and Barrett are, therefore, not precedent for exempting the GIC from G.L.c. 93A exposure, and, indeed, the defining elements of those cases suggest that the GIC is subject to the will of the Legislature as expressed in G.L.c. 93A.
The business of insurance “involves profit driven business decisions about premiums, commissions, marketing, reserves and settlement policies and practices.” Poznik, 417 Mass. at 51.[6] The regulations promulgated by the GIC clearly describe the GIC’s power to determine participant eligibility and the amount and extent of coverage provided under the plan. 805 C.M.R. §§3:05(2) & (5). In addition, the GIC has unfettered discretion to distribute or use dividends and refunds received from life and health insurance companies, governed only by the expectation that the funds will be expended in the best interest of the insured employees, retirees, and their dependents. 805 C.M.R. 3:08, 3:10. In view of those functions, the GIC is, under the Poznik definition, patently engaged in the business of insurance.
The circumstances of its operation compel the conclusion that the GIC functioned as an insurer. Having made the decision to serve as a self-insurer, the GIC became more than a mere statutorily appointed contractor entering into agreements with insurers. By providing a self-insured program, the GIC assumed *140 the role of insurer. Pursuant to G.L.c. 32A, §4A, the GIC entered into contracts with John Hancock by which Hancock was to provide support in the administration of the insurance plan and the processing of claims. The GIC, however, retained ultimate control of determinations of eligibility and claim coverage. See 805 C.M.R. 9:74 (appeals process for claim denial). Moreover, as a self-insurer, the GIC assumed the risk of loss and, consequently, the GIC must make decisions based upon business reasons rather than upon personal or policy-oriented goals. Those characteristics of the self-insured plan at bar handsomely support the conviction that the GIC is in the “business of insurance” and thus is potentially liable for unfair consumer practices under G.L.c. 93A.[7]
As a matter of policy, it would be disingenuous to exempt from regulation an entity that undertakes the role and responsibilities of an insurer in lieu of contracting with an insurance company. Consumer protection laws are intended to protect the public interest and ought not to be rendered impotent because the insurer is a public agency. Allowing a self-insurer to remove itself from the common law and statutory mandates of good faith and fair business practices is not a logical result and would not be tolerated were the self-insurer a part of the private sector. There is nothing in the statutes, regulations or cases which suggests that the Legislature intended to deprive state employees of the protections of G.L.c. 93A merely because the GIC operates under the auspices of the Commonwealth.
Because of the significant differences between, on the one hand, the statutory limitations that serve to insulate the Barrett and Poznik associations from consumer protection laws and, on the other, the statutorily permitted self-insurance activities undertaken by the GIC, this court concludes that the GIC is engaged in the “business of insurance” and in “trade or commerce,” and hence is within the reach of G.L.c. 93A. The GIC’s motion to dismiss the G.L.c. 93A complaint will, therefore, be denied.
ORDER
For the foregoing reasons, the defendant Group Insurance Commission’s motion to dismiss is DENIED.

 The surgery was deemed unnecessary due to “an inadequate trial of non-operative treatment.”

 Much of the language and analysis contained in this Section II is drawn from the opinion of Rremont-Smith, J. in Bellanton v. Daniel, SSC No. 94-2338-A, decided December 14, 1995 [4 Mass. L. Rftr. 676], BeUantoris conclusion provides analogous support for the result reached at bar.

 G.L.c. 32A, §4A was added by the legislature in 1987.

 In their brief in opposition to defendant’s motion to dismiss, the plaintiffs make reference to G.L.c. 176D, the statute which governs unfair trade practices in the insurance industry. However, the amended complaint in this action does not state a claim based upon G.L.c. 176D. The only unfair trade practices allegation made at bar rests upon G.L.c. 93A. Consequently, a discussion of the viability of a G.L.c. 176D complaint need not be engaged here.
Chapter 93Ais the general consumer protection statute in this jurisdiction and proscribes deceptive or unfair trade practices, including those of insurance agencies. G.L.c. 93A, §9. While chapter 93A does not use the term “business of insurance” as does G.L.c. 176D, we may employ the analogous standards expressed in G.L.c. 176D in the matter presently before the court. See Miller v. Risk Management Found. of the Harvard Medical Insts, Inc., 36 Mass.App.Ct. 411, 418 (1994) (this is “consistent with the broad policy of the courts, in defining what is or is not unfair or deceptive for purposes of c. 93A, to go for fruitful analogy to standards established by cognate statutes”).

 A formal self-insured program must be distinguished from a business decision not to insure certain risks. In private industry it is common to label an entity a self-insurer when, in reality, the business has merely made a decision not to obtain insurance coverage for an aspect of its business or for claims which are under a specified dollar amount. This is not true “self-insurance" but a “shorthand business expression which refers to a financial decision not to be insured — a decision that may be prompted as much by a shortage of funds as it is by shrewdness or self-confidence.” California Plant Protection v. Zayre Corp., 39 Mass.App.Ct. 627, 632 (1996) (emphasis in original). While CaliforniaPlant Protection observed that “ ‘[s]elf-insurance’ is neither a business nor a business transaction,” the term was there used in reference to a business decision not to offer insurance. Id. The GIC, however, made a purposeful decision to engage in a true self-insurance program and, thus, consciously chose to enter into the “business of insurance.”