Burnes, J.
INTRODUCTION
On September 27, 1996, the plaintiff Deborah Genatossio filed a complaint for arbitration pursuant to G.L.c. 251 by which she seeks to resolve an under-insurance claim against her insurer, Hanover Insurance Company (“Hanover”). Hanover counterclaimed for declaratory relief, seeking a determination that the tortfeasors were not “underinsured” and that, therefore, Ms. Genatossio has no valid underinsured motorist claim. The resolution of this issue turns on whether the self-retained portion of one of the tortfeasor’s excess liability insurance policy should be considered in determining the policy limits against which Ms. Genatossio’s underinsurance coverage is to be compared in deciding whether the tortfeasor is underinsured. Both parties have moved for summary judgment.
For the reasons set forth in this opinion, the court determines that the self-retained portion of the policy at issue is not an insurance policy as contemplated by G.L.c. 175, §113L. Therefore, the court ALLOWS the plaintiffs motion for summary judgment and DENIES that of the defendant.
DISCUSSION
On June 19, 1992, Ms. Genatossio was injured when riding as a passenger in her own automobile. The vehicle was hit from behind by a vehicle driven by Sandeep Arora (the “Arora vehicle”). The Arora vehicle, in turn, was hit, says Ms. Genatossio, by a vehicle owned by Mediq, Inc. (the “Mediq vehicle”). That vehicle left the scene, although it was later located by the police. The driver of the Mediq vehicle denies any involvement in the accident. Mediq has denied any liability and has made no settlement offers.
Hanover had issued to Ms. Genatossio a standard Massachusetts personal automobile insurance policy, which was in effect at the time of the accident and which provided optional coverage of $250,000 for underinsured motorist coverage. Ms. Genatossio is claiming damages of $125,000 resulting from the accident.
The Arora vehicle carried the statutory minimum liability insurance coverage of $15,000. The insurer of the Arora vehicle has settled with Ms. Genatossio for $15,000.
At the time of the accident, Mediq had a Massachusetts Motor Vehicle Liability Bond, issued by Travelers Insurance Company, in the amount of $15,000 per person and $30,000 per occurrence (the “Travelers bond”). Travelers also issued to Mediq an excess automobile liability indemnity policy with a retained limit of $250,000 for each accident (“Travelers Excess Policy”). Travelers provided $750,000 of coverage above the self-retainage on that policy. Mediq had other excess liability policies providing coverage over the $750,000 limit of the Travelers Excess Policy. The total of Mediq’s insurance coverage was $59,000,000.
With respect to the “retained limit,” the Travelers excess policy provides that “(w]e have no obligation under this policy to reimburse you or anyone else for damages that are wholly or partly within your ‘retained limit,” and that “(t]he insurance afforded by this policy applies only to the amount of damages and ‘defense expense’ in excess of the ‘retained limit.’ ” Travelers Excess Policy at 6 of 14 and 1 of 3. Mediq’s other policies do not cover this retained limit. The National Union Fire Insurance Company excess policy does not drop down, see Endorsement #4; the Transamerica Insurance Group straight excess liability policy does not apply to uninsured motorist coverage, see Uninsured Motorists Exclusion; and the Chubb Commercial Liability Policy is only in excess of the coverage provided by the National Union policy which does not drop down.
The statute in question, G.L.c. 175, §113L(2), provides, in pertinent part, that coverage for underinsured vehicles shall provide:
protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles, trailers or semitrailers, to which a bodily injury liability or bond amount or policy limit is less than the policy limit for uninsured motor vehicle coverage and is insufficient to satisfy the damages of persons insured thereunder and only to the extent that the uninsured motor vehicle coverage limits exceed limits of bodily injury liability subject to the terms of the policy.
The language of Ms. Genatossio’s policy, which is the Fifth Edition of the Massachusetts Automobile Insurance Policy, as it addresses underinsured claims, states in Part 3 of the compulsory insurance section of the policy:
Sometimes an owner or operator of an auto legally responsible for an accident is uninsured . .. Under this Part, we wll pay damages for bodily injury to people injured or killed in certain accidents caused by uninsured or hit and run autos. We will pay only if the insured person is legally entitled to recover from the owner or operator of the uninsured or hit and run auto . . . Sometimes the company insuring the auto responsible for an accident will deny coverage or become insolvent. We consider such an auto to be uninsured for purposes of this Part. However, we do not consider an auto owned by a *629 governmental unit or some one who is legally self-insured to be an uninsured auto.
In Part 12 of the Optional Insurance portion of the policy, Ms. Genatossio’s policy provides:
Sometimes an owner or operator of an auto legally responsible for an accident is underinsured. Under this Part, we will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance.
We will only pay if the insured person is legally entitled to recover from the owner or operator of the underinsured auto. An auto is underinsured when the limits for automobile bodily injury liability insurance covering the owner and operator of the auto are:
1. Less than the limits shown for this Part on your Coverage Selections Page; and
2. Not sufficient to pay for the damages sustained by the injured person.
There is nothing in Part 12 about not considering an auto which is legally self-insured to be uninsured.
DISCUSSION
The facts are not in dispute. Both parties have set out essentially the same set of facts. The dispute is over what those facts mean, as a matter of law. And, in particular, the dispute is over how Massachusetts law views the $250,000 self-retained limit on the Travelers Excess Policy. In such a case, summary judgment is appropriate. Augat, Inc. v. Liberty Mutual Ins. Co., 410 Mass., 117, 118, 120 (1991) (facts not in dispute, summary judgment appropriate). This is true even if there are cross motions for summary judgment. Mass.R.Civ.P. 56(c) (“Summary judgment, when appropriate, may be rendered against the moving party”).
The general rule established by the Supreme Judicial Court is that, when determining whether a policyholder’s underinsurance coverage applies, one must look at the policy limits of the other policies available to provide coverage. “[A]n insurer is not obligated to pay its insured underinsured motorist benefits until the amount of the insured’s damages exceeds the automobile insurance policy limits of those legally responsible for the insured’s injuries." Gleed v. Aetna Casualty & Surety Co., 418 Mass. 503, 510 (1994). In determining the scope of the coverage, it was irrelevant that the insured had released the tortfeasor. What was relevant were the policy limits of the tortfeasor’s coverage. This result flowed naturally from the Safety trilogy of cases decided in 1993. Alguila v. Safety Insurance Company, 416 Mass. 494 (1993) (tortfeasor is not underinsured where bodily injury liability limits are the same as the insured’s underinsurance limits); Safety Insurance Co. v. Laurent, 416 Mass. 500 (1993) (claim for underinsurance coverage moot where payments already made to the insureds by the tortfeasor’s insurer were equal or more than their damages as determined by the arbitrator); Fleurgin v. Safety Insurance Co., 416 Mass. 503 (1993) (to the same effect as Alguila).
More recently, in addressing the language of Part 12 of the Fifth Edition of the standard Massachusetts automobile insurance policy, the Supreme Judicial Court held that, in determining when the underinsurance coverage begins, the policyholder must combine the coverages of all tortfeasors. Hanover Insurance Co. v. Pascar, 421 Mass. 442, 448 (1995). However, in so deciding, the court commented that the policies to be considered were the primary liability policies which insured the tortfeasors. The Travelers policy to which Hanover looks in saying that Mediq had more coverage than is provided by Hanover’s underinsurance policy is an excess policy. Pascar indicated that this policy should not be considered in determining the limits of Mediq’s coverage.
The hesitancy to include excess policies makes eminent sense because such policies may not automatically provide coverage. And that is the case here because of terms and amount of the self-retainage part of the Traveler’s Excess Policy. Under the Travelers Excess Policy, the insurer will pay nothing until the insured has paid the first $250,000. Travelers Excess Policy at 6 of 14 and 1 of 3 (“We have no obligation under this policy to reimburse you or anyone else for damages that are wholly or partly within your retained limit.” And “[t]he insurance afforded by this policy applies only to the amount of damages and ‘defense expense’ in excess of the ‘retained limit’ ”). That is, the insurer has no obligation to defend, investigate, pay expenses or indeed provide any benefits at all to the insured until the damages to be paid on behalf of the insured exceed $250,000.
It is as if the policy does not exist until that point. And, indeed, it does not. In fact, self-insurance is realistically viewed as not insurance at all. Windt, Insurance Claims & Disputes, (3rd edition) at §11.31 (Although in many ways like a deductible, “properly viewed, a self-insured retention does not constitute insurance”). See also California Plant Protection, Inc. v. Zayre Corp., 39 Mass.App.Ct. 627, 632 (1996) (“ ‘Self-insurance’ is neither a business nor a business transaction. It is a shorthand business expression which refers to a financial decision not to be insured . . .”). One of the differences between self-insurance and a deductible may be that the insurer is required to advance the deductible, while the self-retained amount is not advanced. See, e.g., National Union Fire Ins. Co. v. Lawyers’ Mut. Ins. Co., 885 F.Supp. 202 (S.D. Cal. 1995). Of course, that will depend on the policy language. And here that is the way the policy operates. Under the terms of this policy, Travelers will never be obligated to provide first dollar coverage. Contra Massachusetts Insurers Insolvency Fund v. Continental Casualty Co., 399 Mass. 598, 601 (1987) (Where policy provides that it drops down to become *630 excess of any reduced limit of liability, without restriction on the cause of the reduction, the company will be liable when the cause of the reduction is the insolvency of the insurer). The Travelers policy is clear. Travelers is not to be liable for the amount of damages to be paid until the insured has paid the first $250,000.
The effect of the structure of Mediq’s coverage is to leave a gap in insurance coverage from $15,000 to $250,000.[1] There is no insurance policy, beyond the initial $15,000 of the Arora policy, to count to reduce the exposure of Hanover. Because there is no insurance for the amount claimed, Hanover must provide the underinsured coverage.
ORDER
For the reasons set out above, the court ORDERS that the motion for sumary judgment filed by Ms. Genatossio be ALLOWED and that filed by Hanover be DENIED.

 Ms. Genatossio has settled with the Arora vehicle for the limits of that coverage, $15,000. This settlement will serve to lessen the amount of damages she is entitled to recover but does not affect the underinsurance coverage analysis.