732 So.2d 1109 (1999)
Judy ZEICHNER, as Personal Representative of the Estate of Jacob Artman, Appellant/Cross-Appellee
v.
CITY OF LAUDERHILL, a duly organized and existing municipality and The Hartford Casualty Insurance Company, a duly licensed insurance company, Appellees/Cross-Appellants.
No. 97-1931
District Court of Appeal of Florida, Fourth District.
February 17, 1999.
Jesse S. Faerber and Stacie Cohen of Law Offices of Fenster & Faerber, P.A., Plantation and Jane Kreusler-Walsh of Law Office of Jane Kreusler-Walsh, P.A., West Palm Beach, for appellant/cross-appellee.
Rosemary B. Wilder and Richard A. Sherman of Law Offices of Richard A. Sherman, P.A., Fort Lauderdale, and Jeffrey B. Tutan of Law Offices of Alan L. Landsberg, Hollywood, for appellees/cross-appellants.

ON MOTION FOR REHEARING
TAYLOR, J.
We grant appellant's motion for rehearing, withdraw our opinion filed on December 2, 1998 and substitute the following opinion.
Judith Zeichner, individually and as personal representative of the Estate of Jacob Artman, appeals a final declaratory judgment in favor of appellee, Hartford Casualty Insurance Company (Hartford). Appellant claims that the trial court erred in finding that the tortfeasor, the City of Lauderhill (City), was self-insured, and that she was not entitled to receive underinsured motorist benefits, based on appellee's policy exclusion for vehicles owned by a self-insurer. We agree and reverse the trial court's entry of summary judgment for Hartford and remand with directions to enter judgment for appellant.
On January 25, 1995, Jacob Artman was killed in an automobile accident involving a City of Lauderhill police officer. At the time of the accident, Artman had an insurance policy with Hartford that included uninsured motorist (UM) coverage with bodily injury limits of $100,000 per person and $300,000 per accident.
Appellant, the deceased's daughter and executor of his estate, sued the City for wrongful death and, later, added a claim against Hartford for UM benefits. In her complaint, appellant alleged that she was entitled to UM benefits because the City was uninsured and did not maintain liability insurance. Hartford denied coverage *1110 and moved to dismiss the complaint based on its policy exclusion for vehicles owned or operated by a self-insurer. In defining "uninsured motor vehicle," the policy provided:
However, uninsured motor vehicle does not include any vehicle or equipment
. . .
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
Appellant then amended her complaint and included a count for declaratory judgment as to entitlement to UM coverage. The trial court granted Hartford's motion to stay the declaratory relief count pending the outcome of the underlying negligence action against the City. While this stay was in effect, on June 3, 1996, Hartford made an Offer of Judgment in settlement of all claims with the condition that "[e]ach party is to bear their own costs and attorneys' fees."
Through discovery, appellant found out that the City did, in fact, have a liability insurance policy with Lloyd's of London. The City's policy with Lloyd's of London provided in pertinent part, as follows:
As respects any one loss and/or accident or disease and/or claim(s) and/or occurrence(s), including suit(s) brought in connection therewith, the Assured's Loss Fund shall not be charged with 1) any amount in excess of $75,000 Ultimate Net Loss as respects any one loss and/or accident or disease and/or claim(s) and/or occurrence(s), including suit(s) brought in connection therewith, under Section I or II or any combination thereof,
. . .
LIMITS OF LIABILITY: The Underwriters' Limits of Liability under this Agreement shall be only for the excess of loss over $75,000 Ultimate Net Loss each and every loss and/or accident or disease and/or claim(s) and/or occurrence(s), including suit(s) brought in connection therewith ...
The liability limits on the policy were $100,000 per claim or judgment by any one person and $200,000 per occurrence.
Section II referred to above is the Casualty Insurance section. Agreement E of that section provides:
AUTOMOBILE LIABILITY: Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term `Ultimate Net Loss', on account of personal injury including death at any time resulting therefrom, suffered or alleged to have been suffered by any person or persons (excepting employees of the Assured injured in the course of their employment); and/or damage to or destruction of property or the loss of use thereof, arising out of the ownership, maintenance or use of any automobile and occurring during the period of this Insurance.
Appellant settled with the City for $200,000; the City paid $75,000 and Lloyds paid $125,000. Subsequently, she filed a second amended complaint, in which she alleged that the city was underinsured for damages sustained by Artman in excess of its $200,000 liability insurance coverage.
Both parties moved for summary judgment on the declaratory action. At the summary judgment hearing, Hartford argued that appellant was not entitled to coverage under its policy, which excluded vehicles owned by a self-insurer. It explained that the police vehicle was owned by the City, which was self-insured. Hartford sought to establish the City's "self-insured" status by presenting the deposition testimony of a newly hired city personnel *1111 employee, whose bare assertion that the City was self-insured was given little credence by the trial judge. The court commented: "She cannot render a decision that it's self-insured. That's her opinion." Hartford further relied upon the City's response to a request to produce, wherein it stated that the City was self-insured pursuant to section § 768.28, Florida Statutes (1995), and referred to the declarations page of its insurance policy.
Hartford also premised its claim that the city was self-insured upon the fact that it had to pay $75,000 before the insurance policy provided coverage. "If the City has to pay the money out of their own pocket then they're self-insured." Appellant countered that the City held a Lloyd's of London insurance policy, which was inadequate to cover the damages; the City was insured, not self-insured, regardless of a $75,000 "deductible." In addition, appellant emphasized the City's lack of a certificate of self-insurance and absence of proof that the city maintained sufficient net worth to qualify as a self-insurer, as required by section 324.171, Florida Statutes (1995).
The trial court granted summary judgment in favor of Hartford, ruling that appellant was not entitled to UM benefits because the City of Lauderhill was self-insured and not "uninsured."[1] The court relied upon Amica Mutual Insurance Co. v. Amato, 667 So.2d 802 (Fla. 4th DCA 1995). In Amato, which also involved a suit for UM benefits brought by a motorist injured in a collision with a city vehicle, we concluded that a self-insured municipality is not "uninsured" for purposes of recovery of UM benefits. We rejected Amato's challenge to the exclusion of vehicles of self-insurers from the definition of "uninsured motor vehicle," which he claimed was contrary to the general principle that insurers may not reduce statutorily prescribed UM coverage through policy exclusions and exceptions. As we explained in Amato, "[b]y statute, the city is entitled to be self-insured."[2]
We went on to state:
"Self-insured" is different from "uninsured." Uninsured is when the tortfeasor's liability insurer has provided limits of bodily injury liability for its insured which are less than the total damages sustained. [Florida Statute § 627.727(3)(b)(1995) of the Insurance *1112 Code] A self-insured entity is statutorily permitted to retain the risk of liability a risk that is theoretically infinite.
607 So.2d at 803.
However, Amato, unlike the case before us, did not consider the issue whether the subject municipality was self-insured or not. There, the city was presumed to be self-insured. Consequently, Amato offers little or no guidance on the quantum of proof necessary to establish the City's status as a self-insurer. In this case, appellant contends that the evidence presented at the summary judgment hearing did not sufficiently show that the City was self-insured. She pointed to various factors, as discussed above, that demonstrated that it did not qualify as a self-insurer. Among these was the City's failure to obtain a certificate of self-insurance.
In response, Hartford cites Gabriel v. Travelers Indemnity Co., 515 So.2d 1322 (Fla. 3d DCA 1987), which held that the City of Miami's failure to obtain a certificate of self-insurance did not render the city "uninsured." Gabriel was in an automobile accident with a vehicle owned by the City of Miami. The city did not have liability insurance but had a Self-Insurance Program with coverage through its Risk Management Department. The stipulated record in that case showed that the city was financially responsible. However, the city did not have a certificate of self-insurance pursuant to section 324.171, Florida Statutes. Gabriel argued that the failure to prove financial responsibility through a certificate of self-insurance rendered the City "uninsured." The third district disagreed. Noting first that "[t]he [public] purpose of the uninsured motorist statute is to protect persons who are injured or damaged by other motorists who in turn are not insured and cannot make whole the injured party" (quoting from Brown v. Progressive Mut. Ins. Co., 249 So.2d 429, 430 (Fla. 1971)), the court concluded that it was not necessary for Miami to have a certificate of self-insurance to prove it was self-insured. It based its conclusion upon the stipulated facts which showed that Miami had the resources through its trust fund to make Gabriel whole. The court determined:
[t]he certificate is not the sole means of demonstrating self-insurance because section 324.031 does not supersede other statutorily authorized methods of proving financial responsibility. Section 324.031[3] should be considered in conjunction with section 768.28(13)[now 768.28(15)] in keeping with the accepted principle that courts should construe statutes governing the same general field as in harmony.
. . .
The record affords ample proof that the City is self-insured pursuant to section 768.28(13) [now (15)], and consequently, Gabriel is not entitled to obtain uninsured motorist benefits. We note our express conflict with Johns v. Liberty Mut. Fire Ins. Co., 337 So.2d 830 (Fla. 2d DCA 1976), cert. denied, 348 So.2d 949 (Fla. 1977), insofar as it holds that a certificate of self-insurance is the *1113 sole proof of municipal financial responsibility.
Gabriel, 515 So.2d at 1324.
Thus, Hartford's reliance upon Arnica and Gabriel is misplaced. Both cases involved cities which were either presumed or proven to be self-insured. Even without requiring a certificate of self-insurance to prove an entity is self-insured, Gabriel lists other factors that may be considered, i.e., a self-insurance program, trust fund and proof of financial responsibility.
We are not inclined to agree with Hartford's position that the $75,000 "deductible" or self-retained limit should be treated as self-insurance. The city's obligation to pay $75,000 before the Lloyd's of London insurance policy provides coverage is not, in our view, self-insurance. Thus far in Florida, a deductible has been referred to as self-insurance only in the context of personal injury protection coverage, not in connection with UM coverage. We note, however, that state courts in some jurisdictions have ruled that extremely large deductibles, or self-retained limits, do not constitute self-insurance for purposes of recovering UM benefits. See Eubanks v. Rhodes, Inc., 169 Ga.App. 731, 315 S.E.2d 9 (1984); Genatossio v. Hanover Ins. Co., 6 Mass. L. Rptr. 619, 1997 WL 225694 (Mass.Super.Apr.30, 1997).
Because we find that the City was not self-insured as contemplated by the insurance code, we conclude that the trial court should have granted appellant's motion for summary judgment. We, therefore, reverse the declaratory judgment entered for Hartford and remand with directions to enter judgment for appellant.
For reasons stated above, appellee's issue on cross-appeal concerning enforcement of the offer of judgment is moot.
REVERSED and REMANDED.
DELL, J., and LABARGA, JORGE, Associate Judge, concur.
NOTES
[1] In her brief, Appellant posits that the trial judge overlooked the fact that the city held an insurance policy, because the order refers to the plaintiff's original complaint alleging that the city was un insured rather than to plaintiff's second amended complaint, which clarified the existence of a liability policy which was insufficient to cover the plaintiffs damages.
[2] Section 768.28(15)(a) authorizes the city to be self-insured, providing, in pertinent part:

the state and its agencies and subdivisions are authorized to be self-insured ... in anticipation of any claim, judgment, and claims bill which they may be liable to pay pursuant to this section.
Self-insurer is defined in section 324.171, Florida Statutes (1995), which provides:
(1) Any person may qualify as a self-insurer by obtaining a certificate of self-insurance from the department which may, in its discretion and upon application of such a person, issue said certificate of self-insurance when such person has satisfied the requirements of this section to qualify as a self-insurer under this section:
. . .
(b) A person, including any firm, partnership, association, corporation, or other person, other than a natural person, shall:
1. Possess a net unencumbered worth of at least $40,000 for the first motor vehicle and $20,000 for each additional motor vehicle; or
2. Maintain sufficient net worth, as determined annually by the department, pursuant to rules promulgated by the department, with the assistance of the Department of Insurance, to be financially responsible for potential losses. The rules shall take into consideration excess insurance carried by the applicant. The department's determination shall be based upon reasonable actuarial principles considering the frequency, severity, and loss development of claims incurred by casualty insurers writing coverage on the type of motor vehicles for which a certificate of self-insurance is desired.
[3] Florida Statute section 324.031 (1995) provides:

The owner or operator of a taxicab, limousine, jitney, or any other for-hire passenger transportation may prove financial responsibility by providing satisfactory evidence of holding a motor vehicle liability policy ... The operator or owner of any other vehicle may prove his or her financial responsibility by:
(1) Furnishing satisfactory evidence of holding a motor vehicle liability policy as defined in ss. 324.021(8) and 324.151;
(2) Posting with the department a satisfactory bond of a surety company authorized to do business in this state, conditioned for payment of the amount specified in s. 324.021(7);
(3) Furnishing a certificate of the department showing a deposit of cash or securities in accordance with s. 324.161; or
(4) Furnishing a certificate of self-insurance issued by the department in accordance with s. 324.171.