# Third District Court of Appeal

## State of Florida

Opinion filed March 30, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-1455
Lower Tribunal No. 18-4414
_____

**Marvin White,**
Appellant,

vs.

**Ascendant Commercial Insurance, Inc., et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Lourdes Simon, Judge.

Wasson & Associates, Chartered, and Annabel C. Majewski; and Hevia Law Firm, and Anthony Carlos Hevia, for appellant.

Alexander C. Annunziato, for appellee Ascendant Commercial Insurance Inc.

Before LINDSEY, HENDON and LOBREE, JJ.

HENDON, J.

Marvin White ("White") appeals from a final summary judgment in favor of his employer's uninsured motorist ("UM") insurance carrier, Ascendant Commercial Insurance, Inc. ("Ascendant"). We affirm.

White was injured in an accident with a Miami-Dade County School Board ("School Board") bus while riding as a passenger in his employer's work vehicle. He subsequently sued both the School Board and his employer's liability carrier, Ascendant. White settled with the School Board for $175,000.00, and the School Board was dismissed with prejudice.

Subsequently, White sought to collect UM benefits from Ascendant. On Ascendant's motion for summary judgment, White asserted the School Board is self-insured, is statutorily classified as an "uninsured" or "underinsured" tortfeasor, and UM benefits are available. The trial court rejected that argument and determined the School Board was fully insured, not self-insured, and as the School Board's policy provided a limit of liability for single occurrence claims up to $200,000.00, White failed to exhaust those limits. The trial court concluded that, as a result, White cannot seek additional damages via Ascendant's UM coverage, which is triggered by a tortfeasor's underinsurance or lack of insurance. The trial court granted summary judgment for Ascendant. White appeals.

Our review of an order granting summary judgment is de novo, as is our review of the trial court's interpretation of an insurance policy to determine coverage as a matter of law. World Fin. Grp., LLC v. Progressive Select Ins. Co., 300 So. 3d 1220, 1222 (Fla. 3d DCA 2020).

Discussion

We first address White's argument that the School Board is a self-insured government entity and as such is classified as uninsured or underinsured pursuant to section 627.727(3), Florida Statutes (2020), thereby making UM benefits available. Florida's uninsured motorist statute, section 627.727(3), provides the circumstances under which a vehicle is considered "uninsured," even when the vehicle is actually insured. An "uninsured motor vehicle" shall be deemed to include an insured motor vehicle when the liability insurer: ". . . (b) has provided limits of bodily injury liability for its insured which are less than the total damages sustained by the person legally entitled to recover damages." Id. Statutory uninsured or underinsured motorist coverage is meant to compensate the insured for a deficiency in the tortfeasor's coverage. Allstate Ins. Co. v. Marotta, 125 So. 3d 956, 962 (Fla. 4th DCA 2013) (citing Dewberry v. Auto-Owners Ins. Co., 363 So. 2d 1077, 1081 (Fla. 1978)); see also Young v. Progressive Se. Ins. Co., 753 So. 2d 80, 84 (Fla. 2000) (determining that a person or entity who

is a "self-insurer" is not a "liability insurer," and concluding that Florida's uninsured motorist statute treats a motorist who is self-insured as an uninsured motorist).

The School Board, however, regularly pays premiums to United Educators Insurance, A Reciprocal Risk Retention Group, for coverage that provides a combined limit of liability of $500,000.00 for each occurrence, a $500,000.00 annual aggregate, and a retained limit of $200,000.00 for any one occurrence. Even if the School Board retains a portion of the overall risk, this self-retention limit does not constitute self-insurance. See Zeichner v. City of Lauderhill, 732 So. 2d 1109, 1113 (Fla. 4th DCA 1999) (holding that city's $75,000 retained limit did not render it a self-insurer). The School Board's policy plainly indicates that the School Board is not self-insured, and consequently is not "uninsured" pursuant to section 627.727(3). Because the School Board was obligated to pay judgments and settlements up to $200,000.00, White had up to $200,000.00 in available coverage through the School Board.

Ascendant's policy states that uninsured motorist benefits are payable only when the tortfeasor's insurance coverage has been *exhausted* through the payment of judgments or *settlements*. The Young case did not eliminate the exhaustion requirement, and White's settlement did not exhaust the

4

School Board's liability coverage limit. Ultimately, UM coverage exists solely to protect claimants who, because of a lack of insurance or not enough insurance, cannot be made whole.[1] See Young, 753 So. 2d at 86 ("The critical question in determining whether a motorist is uninsured or underinsured is whether the tortfeasor possesses insurance that will make the injured party whole."). In the present case, White failed on motion for summary judgment to demonstrate that the School Board is uninsured or underinsured. See also Allstate Ins. Co. v. Boynton, 486 So. 2d 552, 557 (Fla.1986) (noting that in making a "claim against his UM carrier instead of suing the tortfeasor," the insured "has a policy prerequisite, namely, proof that the tortfeasor is uninsured"). Because the School Board's insurance policy provides a liability limit of $200,000.00, and White did not exhaust benefits under that policy by settling for less than the policy limits, we agree with the trial court that UM coverage was not triggered. See §627.727(3), Fla. Stat. (2020).

---

[1] The record on appeal is silent as to whether White's damages exceeded the settlement amount. See Neff v. Prop. & Cas. Ins. Co. of Hartford, 133 So. 3d 530, 532 (Fla. 2d DCA 2013) (permitting a direct action but requiring the insured to show that she was entitled to UM coverage based on showing her damages exceeded the amount available to her under the tortfeasor's liability policy).

White next asserts that his settlement with the School Board was not the final determination of his damages. He argues that a jury should first determine his total damages, and only then can the court make a determination whether the School Board is underinsured, and trigger UM coverage. We disagree.

An injured insured may bring a direct action against his own uninsured motorist carrier without first resolving a claim against the tortfeasor.[2] See, e.g., Woodall v. Travelers Indem. Co., 699 So. 2d 1361, 1363 (Fla. 1997). However, in bringing a direct action against an uninsured motorist carrier, the insured must first demonstrate his entitlement to UM coverage on the basis that the tortfeasor is an uninsured or underinsured motorist. Neff, 133 So. 3d at 532. "[N]o [UM-coverage] coverage exists if the offending motorist is not actually un- or underinsured." Id. (quoting Vigilant Ins. Co. v. Kelps, 372 So. 2d 207, 208 (Fla. 3d DCA 1979) (emphasis added)). Contrary to White's assertion, it is the trial court, not a jury, which makes the initial determination as a matter of law whether the tortfeasor possesses insurance or is uninsured or underinsured. See Vigilant, 372 So. 2d at 208 (holding it

---

[2] Ascendant's insurance policy language does not impose a condition precedent to filing suit.

is the trial court that must first determine the insurance status of the tortfeasor). "The insured status of the vehicle. . . goes to the existence of coverage, which only the court has the power to resolve." Id. at 209; see also Bradley v. Gov't Emps. Ins. Co., 460 So. 2d 981, 981 (Fla. 3d DCA 1984) ("In deciding whether the plaintiff-appellant was entitled to uninsured motorist coverage under the GEICO policy, the trial court, not the arbitrators, was required to determine whether the uninsured motorist policy applied to the case at hand.").  White's argument that only after a jury determination of damages can the court determine the insurance status of the School Board would overturn the trial court's proper function to make the initial determination of law whether UM coverage is available.

Based on the above analysis, we affirm the trial court's final summary judgment in favor of Ascendant.

Affirmed.