WAYNE R. ULWICK *vs.* MASSACHUSETTS INSURERS
INSOLVENCY FUND & others.[1]

Middlesex. February 8, 1994. - July 26, 1994.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Insurance*, Insolvency of insurer. *Massachusetts Insurers Insolvency Fund.*
*Statute*, Construction. *Words*, "Covered claim," "Insurer."

A claim of an injured police officer against the insolvent insurer of the
third persons liable for his injury was a "covered claim" under G. L. c.
175D, § 1 (2), where it was an "unpaid claim" against an insolvent
insurer [488] and did not include any amount due any other insurer,
inasmuch as the municipality paying the officer compensation pursuant
to G. L. c. 41, §§ 100 and 111F, was not an "insurer" within the lan-
guage or intent of G. L. c. 175D, § 1 (5) [488-491]. WILKINS, J., dis-
senting, with whom ABRAMS and GREANEY, JJ., joined.

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 16, 1992.

The case was heard by *James F. McHugh*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Joseph C. Tanski* for Massachusetts Insurers Insolvency
Fund.

*James N. Esdaile, Jr.*, for the plaintiff.

O'CONNOR, J. The defendant Massachusetts Insurers In-
solvency Fund (Fund), a nonprofit unincorporated entity cre-
ated by G. L. c. 175D, § 3 (1992 ed.), is obligated to pay
covered claims against an insolvent insurer (up to $300,000
per claim) in place of the insolvent insurer. G. L. c. 175D,
§ 5 (1) (*a*) and (*b*) (1992 ed.). "[U]nless the context clearly

---

[1]Jeffrey Salvatore and Emily Gulla, neither of whom has filed a brief in
this court. The plaintiff has filed a motor vehicle tort action against
Salvatore and Gulla which remains unresolved.

requires otherwise," the term "covered claim" as used in G. L. c. 175D means "an unpaid claim . . . which arises out of and is within the coverage of an insurance policy to which [c. 175D] applies issued by an insurer, if such insurer becomes an insolvent insurer. . . . 'Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association." G. L. c. 175D, § 1 (2). "Unless the context clearly requires otherwise," the word "insurer" as used in c. 175D, means "any person . . . who (*a*) writes any kind of insurance to which [c. 175D] applies . . . and (*b*) is licensed to transact insurance in the commonwealth." G. L. c. 175D, § 1 (5).

The issue in this case is whether the plaintiff's claim against American Mutual Insurance Company (American Mutual), an insolvent insurer, is a "covered claim" within the meaning of G. L. c. 175D. A judge of the Superior Court decided on a statement of agreed facts that the claim was a covered claim and a judgment to that effect was entered. The Fund appealed and we transferred the case to this court on our own initiative. We affirm the judgment.

On September 26, 1986, a motor vehicle which was owned by the defendant Gulla, operated by the defendant Salvatore, and insured by American Mutual, struck a motorcycle that Ulwick was operating without fault in the course of his duties as a city of Melrose police officer. The American Mutual policy provided liability coverage of $100,000 per person for personal injuries. Since the accident, Melrose has paid Ulwick's medical bills, an amount exceeding $100,000, as required by G. L. c. 41, § 100 (1992 ed.). Melrose has also paid more than $100,000 to Ulwick for lost wages pursuant to G. L. c. 41, § 111F (1992 ed.), which, in the circumstances of this case, requires a municipality to grant an incapacitated police officer leave without loss of pay. In addition, Ulwick has recovered $10,000 in uninsured motorist benefits under his own motor vehicle insurance policy.

After Ulwick commenced a tort action against Gulla and Salvatore, American Mutual's insureds, American Mutual mailed a letter to Ulwick's counsel offering to pay the full

policy limit of $100,000 to Ulwick to settle the tort case. The offer was not accepted and, on March 9, 1989, without having paid the claim, American Mutual was declared insolvent. If Ulwick's claim is a covered claim, Ulwick and the Fund agree that the Fund is obligated to pay Ulwick up to $90,000, which is the American Mutual policy coverage of $100,000 minus the uninsured motorist benefit of $10,000 that Ulwick recovered from his own insurer because Gulla's vehicle was insured by an insolvent insurer. See *Vokey* v. *Massachusetts Insurers Insolvency Fund*, 381 Mass. 386, 390 (1980).

The Fund first argues that, because Melrose has paid Ulwick in excess of $200,000, Ulwick's claim against American Mutual is not an unpaid claim. We reject that argument. Ulwick's claim against American Mutual is unpaid. A covered claim is one that "arises out of and is within the coverage of an insurance policy to which [c. 175D] applies." G. L. c. 175D, § 1 (2). Ulwick's claim against American Mutual is such a claim, and it is unpaid because American Mutual is insolvent. Ulwick's claims against Melrose for reimbursement of medical expenses and payment of wages during his disability, however, did not arise out of American Mutual's insurance policy. Instead, the claims against Melrose arose out of G. L. c. 41, §§ 100 and 111F. Melrose's payments of the statutory claims against it therefore did not constitute payment of Ulwick's claim against American Mutual arising out of an insurance policy. As Ulwick observes, "[i]t is the claim, not the injured person, which must be 'unpaid' in order that the claim be considered a 'covered claim.' "

We proceed now to the Fund's second argument. Of course, it is not enough that Ulwick's claim is an unpaid claim arising out of and within the coverage of American Mutual's policy. In order to be a covered claim, the claim also must "not include any amount due any reinsurer, insurer, insurance pool, or underwriting association." G. L. c. 175D, § 1 (2). The Fund's argument is that, if the court were to require the Fund to pay Ulwick, Melrose ultimately

would be entitled to that money under G. L. c. 41, §§ 100 and 111F. Those sections provide that, where, as here, a police officer is injured in circumstances entitling him under those sections to compensation from his municipal employer and a third person is liable for the injury, the municipal employer shall be entitled to reimbursement from any recovery from the third party. The Fund further argues that the court should treat Melrose as an insurer. If the court were to accept the Fund's argument, the result would be that Ulwick's claim would include an amount due an insurer and therefore would not be a covered claim under G. L. c. 175D, § 1 (2).

The Fund's argument fails because Melrose does not come within the definition of "insurer" set forth in G. L. c. 175D, § 1 (5), and the context does not require that Melrose be considered to be, or treated as, an insurer. Melrose is not a "person . . . who (*a*) writes any kind of insurance to which [c. 175D] applies . . . and (*b*) is licensed to transact insurance in the commonwealth." See § 1 (5). In construing and applying G. L. c. 175D, then, we are not free to treat Melrose as an insurer, as the Fund urges us to do, unless the context of G. L. c. 175D, § 1 (2), "clearly requires" us to do so, which it does not.

Expansion of the explicit definition of the word "insurer" may be justified only when, and to the extent that, the context of the statute clearly requires such expansion in order that the statute be internally consistent and consistent with the obvious legislative objective in enacting it. *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483 (1980), *S.C.*, 383 Mass. 36 (1981), is instructive. In that case, the plaintiff was injured in an employment related motor vehicle accident. He received more than $35,000 in workers' compensation benefits from an insurance company, that is, a company that wrote insurance and was licensed to transact insurance in the Commonwealth. At that time, however, workers' compensation was exempted from the Fund. The Appeals Court reasoned that the workers' compensation carrier did not come within the explicit definition of "insurer" in c. 175D, § 1 (5), because it did not write insurance "to which this chapter

[175D] ȧpplie[d]." *Ferrari*, 9 Mass. App. Ct. at 485. It was not, therefore, a member of the Fund. Faced, then, with the question "whether the exclusion of amounts due an insurer from claims for which the Fund must pay is limited to Fund member insurers or whether 'the context clearly requires otherwise' and the exclusion extends to *segments of the insurance industry* which are not participants in the Fund" (emphasis added), the Appeals Court concluded that "[t]he latter is the case." *Id.* at 485-486. In concluding that a "covered claim" does not include any amount due an insurance company regardless of whether it is a member of the Fund, the Appeals Court looked to the model act after which G. L. c. 175D is patterned, in which the covered claim exclusion clearly applies to all insurance companies regardless of their membership in the Fund. *Id.* at 486. The Appeals Court also reasoned that, in order to give effect to the reference in G. L. c. 175D, § 1 (2), to "insurance pool[s]," and "underwriting association[s]," which· cannot be members of the Fund, it is necessary to conclude that the word "insurer" in § 1 (2) was intended by the Legislature to include "insurers beyond member insurers." *Id.* In expanding the definition of the word "insurer" to include insurance companies that were not members of the Fund, the Appeals Court did not go beyond the clear requirements of the statutory context.

None of the Appeals Court's reasoning in *Ferrari*, 9 Mass. App. Ct. 483 (1980), subsequently adopted by this court in 383 Mass. 36 (1981), construing the word "insurer" in G. L. c. 175D, § 1 (2), as including all members of the insurance industry, is authority for the proposition that the context of G. L. c. 175D "clearly requires" that municipal employers, who are not members of the insurance industry, be treated as insurers in order that they not benefit from the Fund when a member of the insurance industry has been declared insolvent. The obvious legislative purpose in establishing the Fund, which is funded by the insurance industry, is to benefit members of the public, individuals and entities, including municipal employers like Melrose, which are outside the insurance industry, from losses due to the insolvency of a mem-

ber of that industry. Ulwick's claim is an unpaid claim against an insolvent insurer. The claim is not for a sum due an insurer. The claim is a covered claim.[2]

*Judgment affirmed.*

WILKINS, J. (dissenting, with whom Abrams and Greaney, JJ., join) The court's opinion unnecessarily provides a windfall to Ulwick and unfairly burdens the motor vehicle insurance buying public with losses that should not be imposed on them.

The windfall is apparent. The city, which has paid Ulwick's medical expenses and lost compensation in amounts exceeding $100,000, in each instance, has transferred its rights against the Fund to Ulwick. Ulwick, fully reimbursed to date and assured of the payment of his future medical expenses and future lost compensation, now may also assert a right to recover lost wages and medical expenses against the driver and owner of the vehicle covered by American Mutual. There is no logical reason why Ulwick should be compensated twice for these losses. The fact that the city of Melrose gave up any subrogation claim that it had against the Fund when it transferred its rights to Ulwick suggests that the city believed that it had no significant claim of subrogation against the Fund or American Mutual's insureds. The city was correct in that judgment.

---

[2]The dissenting Justices argue that, because Melrose has transferred to Ulwick any right it may have had against the Fund pursuant to G. L. c. 41, §§ 100 and 111F, our holding results in an unnecessary windfall to Ulwick. It is worth noting that Ulwick will not receive a windfall unless he recovers more than enough to fairly compensate him not only for lost wages and medical expenses but also for past, present, and future pain and suffering. No such windfall has been established or seems likely. Furthermore, any windfall that occurs should be attributed to the largess of Melrose, which presumably transferred its claims against the Fund to its injured police officer in order to ensure that he would be made as whole as possible, not to the court's opinion.

The city was an insurer within the intent of the Legislature. Our opinion in *Ferrari* v. *Toto*, 383 Mass. 36 (1981), adopting the reasoning of *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483, 486 (1980), does not answer that question, but it points us in the right direction. It rejected the use of the definition of "insurer" in G. L. c. 175D, § 1 (5), in resolving a similar issue. It also considered the larger purpose of denying recovery against the Fund to persons or entities who normally would be entitled to subrogation against the wrongdoer's insurer. The statute reverses the result regularly obtained by the collateral source rule. It does so to assure that, when a person has an insurance source to cover damages, the motor vehicle insurance buying public is not hit with the loss. The Fund (and the public) should be a last resort source of protection, as the Legislature intended.

That view of the purpose of a broad remedial statute such as G. L. c. 175D is wholly consistent with our treatment of other such wide-reaching legislation. In a number of instances involving a statute of broad scope, we have "rejected the concept that limiting statutory words, literally read, were fully expressive of the applicable law." *Intriligator* v. *Boston*, 395 Mass. 489, 491 (1985). See *Mailhot* v. *Travelers Ins. Co.*, 375 Mass. 342, 348 (1978). Justice Kaplan, in his *Mailhot* opinion, explained well why one should consider a section of such a statute in its relation to the legislation as a whole: "In so large a legislative enterprise, there are likely to be casual overstatements and understatements, half-answers, and gaps in the statutory provisions. As practice develops and the difficulties are revealed, the courts are called on to interweave the statute with decisions answering the difficulties and composing, as far as feasible and reasonable, an harmonious structure faithful to the basic designs and purposes of the Legislature." *Id.* at 345. The court has failed to adhere to this wise understanding of its appropriate function.

My view that Melrose was an insurer within the legislative purpose results from the following further analysis. If a municipality were a workers' compensation self-insurer for its non-police and non-fire department personnel, we would treat

the municipality as an insurer within the meaning of the words in § 1 (5). The municipality assumes the role of an insurer, and the Fund's liability should not vary depending on a municipality's election between purchasing insurance and self-insuring. In each such instance, the cost of the protection afforded its employees should fall on the municipality.

The question then is whether the statutory protection that a municipality must afford to a police officer against lost wages and the cost of medical care also puts the municipality into the category of an insurer for the purposes of G. L. c. 175D, § 1 (5). In every practical sense, the municipality is an insurer against a police officer's loss of wages and the cost of medical expenses in those circumstances where the respective reimbursement statutes apply. See G. L. c. 41, §§ 100, 111F. A municipality may, of course, protect itself by purchasing insurance against such losses. See *Jones* v. *Wayland*, 374 Mass. 249, 261-262 (1978). We have ruled that G. L. c. 41, § 111F, is a law similar to workers' compensation. *Wincek* v. *West Springfield*, 399 Mass. 700, 703-704 (1987). An insurer under the workers' compensation act includes a self-insurer and a municipality acting as a self-insurer. G. L. c. 152, § 1 (7) (1992 ed.). Again, the result should not turn on whether the city bought insurance. There is no reason in logic to make a distinction in the Fund's obligation depending on whether the injured municipal employee worked as a police officer or firefighter or in some other municipal position, or whether the municipal employer purchased insurance against such losses or not.