MASSACHUSETTS INSURERS INSOLVENCY FUND *vs.*
GAIL S. LADD.

No. 94-P-1059.

Suffolk. November 3, 1995. - December 26, 1995.

Present: SMITH, JACOBS, & GREENBERG, JJ.

*Massachusetts Insurers Insolvency Fund. Insurance,* Insolvency of insurer,
Motor vehicle insurance, Underinsured motorist. *Lien. Words,* "Cov-
ered claim."

The Massachusetts Insurers Insolvency Fund was obligated to pay a claim
for underinsured motorist benefits against an insolvent insurer where it
was a "covered claim" within the meaning of G. L. c. 175D, and not
subject to any offsets on account of medical or Social Security benefits
received by the injured party [555-557], and where the claim did not
include any amount due another insurer [557-558].

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 18, 1992.

The case was heard by *Martha B. Sosman,* J., on motions
for summary judgment.

*Joseph C. Tanski* for the plaintiff.
*John P. McGloin* for the defendant.

SMITH, J. The Massachusetts Insurers Insolvency Fund
(Fund) has appealed from a decision by a Superior Court
judge denying its motion for summary judgment and grant-
ing summary judgment in favor of Gail S. Ladd.

The facts are not in dispute. Ladd was injured in a motor
vehicle accident in July, 1988. At the time of the accident,
Ladd's vehicle was insured with American Mutual Insurance
Company (American Mutual). The policy provided, among
other coverage, underinsured motorist coverage up to a limit
of $10,000. The other vehicle was insured by Sentry Insur-
ance Company (Sentry), and that policy had a $50,000 limit.

Following the accident, Ladd incurred medical care charges in the amount of $6,576, which was paid by her North Shore Health Plan (North Shore). She also received $3,424 in Social Security disability benefits, and $2,000 in PIP benefits from American Mutual. On November 28, 1988, North Shore notified all parties, including American Mutual, Sentry, and Ladd's attorney, of its exercise of a lien pursuant to G. L. c. 111, § 70A, with reference to the benefits it had extended to Ladd.[1]

On March 9, 1989, American Mutual was adjudged to be insolvent by order of the Supreme Judicial Court. Arbitration between Ladd and Sentry determined the total amount of Ladd's damages to be $62,500. Sentry issued a check to Ladd for $50,000, the extent of its coverage. From that amount, Ladd's attorney issued a check to North Shore, dated January 7, 1991, in the amount of $6,575.58 and obtained North Shore's general release of its lien.

On January 27, 1992, Ladd filed a claim for arbitration against the Fund seeking to recover under the underinsured motorist provision of her American Mutual policy. She claimed to be underinsured by $12,500, the difference between the $62,500 in damages awarded by the arbitrator in her claim against the other vehicle involved in the accident and the $50,000 she received from Sentry, the insurance carrier for the other vehicle.[2] The Fund responded that it was not obligated to pay Ladd anything because she had received from outside sources more than $10,000, the extent of Ladd's claim against American Mutual.

Subsequently, the Fund and Ladd agreed to suspend arbitration until the issue of the Fund's obligation to Ladd was

---

[1]General Laws c. 111, § 70A, as amended by St. 1978, c. 133, § 1, provides in relevant part that "any health maintenance organization which has furnished health services, and any hospital, medical, or dental service corporation which has provided benefits for covered services furnished to a person injured in . . . an accident [not covered by the workers' compensation act] shall . . . have a lien for such benefits . . . ."

[2]Ladd overreached in her claim with the Fund. Because there was a $10,000 limit on the underinsured portion of her policy, the most she could receive from the Fund would be $10,000.

resolved. To accomplish that end, the Fund brought an action in the Superior Court seeking a declaration that it was not obliged to pay Ladd under her motor vehicle insurance policy with American Mutual. After a hearing, a Superior Court judge ruled that the Fund could not offset its obligation to pay Ladd with the money she received from other sources. The judge, therefore, denied the Fund's motion for summary judgment and granted summary judgment in favor of Ladd.

1. *Does Ladd have a "covered claim" or "unpaid claim" as defined by G. L. c. 175D?* "The Fund is a statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . ." *Commissioner of Ins.* v. *Massachusetts Insurers Insolvency Fund,* 373 Mass. 798, 799 (1977). The Fund was designed "to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer." *Ibid.* Thus, the Fund "is obligated to pay covered claims against an insolvent insurer . . . in place of the insolvent insurer. G. L. c. 175D, § (5) (1) (*a*) & (*b*)." *Ulwick* v. *Massachusetts Insurers Insolvency Fund,* 418 Mass. 486, 486 (1994). A "covered claim" is defined as "an unpaid claim . . . which arises out of and is within the coverage of an insurance policy . . . issued by an insurer, if such insurer becomes an insolvent insurer. . . ." G. L. c. 175D, § 1(2), inserted by St. 1970, c. 261, § 1. The Fund claims that any obligation it might otherwise have to pay Ladd must be offset by the payments she has received from other sources. According to the Fund, Ladd received $6,576 from North Shore,[3] $3,424 in disability benefits under the Social Security Act, and $2,000 in PIP benefits from American Mutual prior to its insolvency and, therefore, Ladd's claim is not an "unpaid claim" under G. L. c. 175D.

Ladd's claim against American Mutual is a "covered claim" because it "arises out of and is within the coverage of

---

[3]The Fund, in its calculations, ignores Ladd's reimbursement of North Shore. It argues that Ladd was not *compelled* to make such a payment. We take up the Fund's argument later in this opinion.

an insurance policy to which [c. 175D] applies." G. L. c. 175D, § 1(2). *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, 418 Mass. at 488. American Mutual did not pay Ladd under its policy because American Mutual is insolvent. The payments that Ladd received from North Shore (subsequently repaid) and from Social Security[4] did not result from the insurance coverage that Ladd had with American Mutual, and would not have offset or reduced American Mutual's liability under the policy. Ladd's claim against American Mutual therefore remained an "unpaid claim." See *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, 418 Mass. at 488 (injured police officer's claim against insolvent insurer was "unpaid claim" even though the employing municipality had paid the officer's medical expenses and disability leave pay in excess of insurance policy limits). Accordingly, we reject the Fund's argument that, in the circumstances shown here, the Fund was entitled to offset its obligation to Ladd by the amounts she received from North Shore and Social Security. "It is the claim, not the injured person, which must be 'unpaid' in order that the claim be considered a 'covered claim.' " *Ibid.*

The Fund does not take into account in its calculations that Ladd reimbursed North Shore for the money it paid her. According to the Fund, that reimbursement cannot be considered because G. L. c. 175D relieved her of any obligation to repay North Shore. We reject that argument.

There is nothing in the language of G. L. c. 175D that supports the Fund's argument. Rather, G. L. c. 111, § 70A, authorized health maintenance organizations such as North Shore to have a lien on any money that Ladd received from Sentry. See note 1, *supra.* As a practical matter, Ladd could

---

[4]The Fund did not make a specific argument in the Superior Court concerning the issue of offsetting its obligation to Ladd with the amount of PIP benefits. The motion judge in reaching her decision noted that the issue does not need to be decided because, even if the Fund was correct that the PIP benefits must be deducted from Ladd's total damages ($62,500), Ladd's damages would then be $60,500, leaving $10,500 on her insurance claim, an amount in excess of Ladd's underinsurance policy. We take the same approach and do not address the PIP benefits issue.

not obtain her $50,000 settlement from Sentry without first satisfying North Shore's lien. See G. L. c. 111, § 70C, which imposes personal liability on any person who, with prior notice of a § 70A lien, pays funds to the injured person.[5]

2. *Does any of the Fund's payment to Ladd go to an insurer?* "In order to be a covered claim, the claim also must 'not include any amount due any reinsurer, insurer, insurance pool, or underwriting association.' " *Ulwick* v. *Massachusetts Insurance Insolvency Fund*, 418 Mass. at 488, quoting from G. L. c. 175D, § 1 (2). See also *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483, 486 (1980) ("We are of the opinion that the Fund is excused from paying claims if the ultimate beneficiary is an insurance company"), S.C., 383 Mass. 36 (1981).

The Fund argues that it cannot reimburse Ladd for the $6,576 she paid North Shore because the "bottom line" effect would be that such payment would go to an insurance company. The short answer to that argument is that North Shore has been paid out of the settlement Ladd received from Sentry. Not one cent of the money that Ladd would receive from the Fund would go to North Shore.[6] We add

---

[5] The Fund even argues that Ladd, rather than reimbursing North Shore, should have hired a lawyer and brought a law suit against North Shore seeking an order that North Shore must remove its lien without Ladd reimbursing it or, alternatively, should now bring an action against North Shore to reimburse her for the money she paid.

The Fund, in making that argument, fails to recognize that Ladd is the innocent party here. There is nothing in G. L. c. 175D that demonstrates that a person whose insurer becomes insolvent is to take such steps in order to protect the Fund.

[6] The Fund argues that *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483 (1980), S.C., 383 Mass. 36 (1981), supports its argument that any money it pays Ladd would, in effect, go to an insurance company.

In *Ferrari*, the plaintiff, while in the course of his employment, suffered injuries in an automobile accident which warranted recovery in excess of $35,000. He received over $35,000 in workers' compensation benefits. The other vehicle was insured to the extent of $20,000 by an insurance company which was subsequently adjudged to be insolvent. The plaintiff applied to the Fund for the full $20,000 limit of the policy. The Fund denied liability, and the court ruled in favor of the Fund, reasoning that it was an amount due an insurer (the plaintiff's workers' compensation insurer). Here, there is no amount due a coinsurer. As we have previously stated,

that the United States Department of Health and Human Services which administers the social security fund, does not come within the definition of "insurer" set forth in G. L. c. 175D, § 1 (5) — it is not a "person . . . licensed to transact insurance in the Commonwealth."

We recognize that "the design of the Fund [is] to indemnify injured persons, but not the insurance industry." *Ferrari v. Toto,* 9 Mass. App. Ct. 483, 487 (1980). In the circumstances of this case, the insurer (North Shore) is not being indemnified.

*Judgment affirmed.*

---

not one cent of the Fund's money would go to an insurance company. *Ferrari* v. *Toto, supra,* does not control this matter.