Roach, Christine M., J.
James N. Ellis, Jr. (“Ellis”), seeks payment from the Massachusetts Insurers Insolvency Fund (the “Fund”) to recover costs he incurred in defending, and ultimately settling, an action by St. Paul Fire & Marine Insurance Company (“St. Paul”) brought against him and his law firm. The Fund has filed this motion for partial judgment on the pleadings,[1] asserting that it is not obligated to pay Ellis the $200,000 he paid to settle St. Paul’s claim because that claim is not a “covered claim” and thus statutorily excluded from the Fund’s obligations. Following hearing on June 3, 2008, and supplemental briefing by the parties, the Fund’s motion is ALLOWED, for the reasons discussed below.
Record Facts
The facts and reasonable inferences, viewed in the light most favorable to Ellis, are as follows.[2] On January 26, 1995, St. Paul filed a diversity suit against Ellis and his firm, Ellis & Ellis (“the Firm”) in United States District Court for the District of Massachusetts (the “St. Paul suit”). St. Paul asserted claims against Ellis and the Firm for common-law fraud, statutory workers’ compensation fraud (G.L.c. 152, §14), negligence, and violation of G.L.c. 93A in connection with Ellis’s and the Firm’s representation of David Formoso (“Formoso”) in a proceeding before the Department of Industrial Accidents (“DIA”). Formoso’s proceeding before the DIA arose out of an alleged workplace accident in November 1989 at the Westford Regency Hotel. St. Paul alleged, in part, that Ellis and the Firm owed St. Paul, the workers’ compensation carrier of the Westford Regency Hotel, a duly of care which Ellis and the Firm breached by failing to disclose various facts: (1) Formoso’s prior workers’ compensation claim for a low back injury; (2) Formoso’s prior low back injury; and (3) Formoso’s other identity or alias, i.e., “Dennis Milan.”
At the time of the St. Paul suit, Ellis and the Firm were covered by a legal malpractice insurance policy (“the policy”) issued by the Home Insurance Company (“Home”). From Ellis’s point of view, the Home policy, effective between August 1, 1994 and August 1, 1995, potentially provided both indemnification and defense coverage including appeal (within the limits of $1 million per occurrence and $2 million in the aggregate, and $10,000 per claim deductible) for the St. Paul claim.
Ellis and the Firm sought a defense from Home, which it agreed to provide under a reservation of rights. The St. Paul suit was tried to a jury between April 6 and 21, 1998. At the conclusion of St. Paul’s case, Ellis and the Firm moved for judgment as a matter of law. The District Court granted that motion. St. Paul appealed that decision to U.S. Court of Appeals for the First Circuit. The First Circuit reversed the District Court, vacated the judgment which had entered in favor of Ellis and the Firm, and remanded for further proceedings. On remand, all parties moved for summary judgment; all such motions were denied.
On or about June 13, 2003, the Superior Court of New Hampshire declared Home insolvent and the Fund became the successor to Home’s rights and obligations under the policy. Ellis and the Firm timely filed a Proof of Claim with Home in Liquidation. In March 2004, before re-trial and after providing notice of a proposed settlement to the Fund, Ellis, the Firm, and St. Paul settled the St. Paul suit for $200,000 funded by a $200,000 escrow Ellis had previously deposited in accordance with an order of the United States District Court.
*430 In June 2004, Ellis and the Firm demanded that the Fund reimburse them for $272,234.94 — the settlement amount plus defense costs they had incurred in the St. Paul suit. In October 2004, the Fund denied it had any defense or indemnification obligations in connection with the policy and the St. Paul suit. Ellis then filed this action against the Fund, seeking to obtain reimbursement from the Fund for Home’s obligation under Ellis’s policy. According to Ellis, the money he seeks in this action will go to him personally, and not to an insurer, because he funded the settlement. The Fund’s position is that because St. Paul, an insurer, was the original claimant, and the money in factwentto St. Paul, this is nota“covered claim” under the statute.
Standard of Review
In deciding a motion for judgment on the pleadings, all facts pleaded by the nonmoving party must be accepted as true. Jarosz v. Palmer, 436 Mass. 526, 530 (2002). However, where the allegations in the plaintiffs complaint are taken as true, but the plaintiff nonetheless could prove no set of facts that would entitle him to relief, dismissal of the plaintiffs complaint is appropriate under Mass.R.Civ.P. 12(c). Thus a motion for judgment on the pleadings challenges “the legal sufficiency of the complaint, and a defendant so moving is effectively moving to dismiss. James W. Smith & Hiller B. Zobel, Rules Practice .§12.18 at. 218 (2006). The defendant is entitled to judgment under Rule 12(b)(6) when a complaint fails to provide factual allegations sufficient to raise a right to relief above the speculative level. Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008).
The Statutory Standard — G.L.c. 175D
This case involves the rights and obligations of the Fund as provided by the Fund’s enabling legislation. See G.L.c. 175D. The Fund is “to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer.” Massachusetts Insurers Insolvency Fund v. Ladd, 39 Mass.App.Ct. 553, 555 (1995), quoting Commissioner of Insurance v. Massachusetts Insurers Insolvency Fund, 373 Mass. 798, 799 (1977). The Fund “is obligated to pay covered claims against an insolvent insurer in place of the insolvent insurer.” Ladd, 39 Mass.App.Ct. at 555 (citations and quotations omitted). See G.L.c. 175D, Section 1 (5)(a) & (b). A “covered claim” is an unpaid claim “which arises out of and is within the coverage of an insurance policy . . . issued by an insurer).]” G.L.c. 175D, §1(2). The Fund must deny all other claims not provided for in the statute. G.L.c. 175D, §5(l)(d). A “covered claim” expressly excludes any amount “due any reinsurer, insurer, insurance pool or underwriting association.” Ulwick v. MIIF, 418 Mass. 486, 488 (1994) (municipal employer not insurer for purposes of the statute); Ferrari v. Toto, 9 Mass.App.Ct. 483, 485-87 (1980); G.L.c. 175D, §1(2). The purpose of the Fund is to indemnify insureds, not the insurance industry. Dufresne’s Case, 51 Mass.App.Ct. 81, 88-89 (2001).
The Fund’s argument is that a $200,000 payment to Ellis is effectively a payment to St. Paul, an insurer, because St. Paul was the original claimant for the matter allegedly insured by the Home policy. In support of this argument, the Fund points to numerous cases where the Fund’s obligation to pay was either reduced or excused on the basis of a ruling that the underlying claim was not “covered” by the Fund. See, e.g., Case of Pilon, 69 Mass.App.Ct. 167, 173 (2007) (ruling Fund may not reimburse claimant where claimant is a conduit for insurer); CNA Insurance Companies, Inc. v. Semedo-Anacleto, 39 Mass.App.Ct. 271, 275 (1995) (concluding that workers’ compensation insurer is precluded from reimbursement from the Fund); Ferrari v. Toto, 9 Mass.App.Ct. 483, 484 (1980) (holding liability of Fund reduced by “so much as the claimant has received on account of the same injury from workmen’s compensation insurance”). There is no doubt or dispute on this record that St. Paul is an insurer for purposes of the statutory definition, a meaning which applies “unless the context clearly requires otherwise.” G.L.c. 175(D), Section 1 first para, and 1(5).
Ellis counters that this context requires otherwise, and that his claim for reimbursement of the $200,000 settlement is clearly a “covered claim,” because he was the individual consumer claimant attempting to enforce his professional liability policy; Ellis is plainly not an insurer who seeks payment for an unpaid claim. The twist of fate — and the dual controlling facts — that distinguish this case from all others cited by the parties is that Ellis was defending a suit brought directly against him, for purposes of primary tort liability, by another insurance company. Moreover, Ellis voluntarily settled that claim, apparently with no written provisos within that agreement referencing the situation of the Fund. Thus it was an insurance company that first sought to shift to Ellis its loss in the underlying workers’ compensation dispute, which loss Ellis then sought to shift to his professional liability carrier. However, once Home became insolvent, St. Paul’s efforts to shift the loss became exactly the sort of “shuffling of funds among insurance companies . . . [t]he statutory scheme which established the Fund seeks to avoid.” Ferrari, 9 Mass.App.Ct. at 485. The Fund is correct that once Home became insolvent, St. Paul should have filed its claim directly with the receiver of Home. The fact that Ellis chose to fund a settlement instead — -which choice Ellis states by affidavit was for his own strategic and financial reasons — does not change the fact that the primary claimant has always been St. Paul. It is clear that insureds may not act as conduits for funds ultimately due insurers,[3] and the court sees no reason why this same standard should not apply to funds already disbursed to an insurer.
*431 Likewise the implications as a matter of law cannot be changed. The Appeals Court’s reasoning in Pilón is instructive: “The question, however, is not whether [the second employer’s insurer] has a right of reimbursement against [the first employer’s insurer] which it undoubtedly would, were [that first employer’s insurer] still solvent, but whether the Insolvency Fund must make good on that reimbursement. We agree with the Insolvency Fund that the order to reimburse ... is an error of law.” Pilon’s Case, 69 Mass.App.Ct. at 172. Here, as there, the ultimate beneficiary remains an insurer. The court has carefully considered referenced authority finding certain entities (or contexts) outside the statutory preclusion, but finds these facts readily distinguishable from those. Cf. Ulwick, 418 Mass. at 488-91 (where the ultimate beneficiary was a municipal employer, not a member of the insurance industry for purposes of Section 1(2)); Ladd, 39 Mass.App.Ct. at 557-58 (medical lien paid from funds of another insurer; “not one cent” of reimbursement to insured would go to an insurer; social security system outside statute in any event); California Plant Protection, Inc. v. Zayre, 39 Mass.App.Ct. 627 (1996) (third-party contractor who was self-insured deemed outside the insurance industry for purposes of Section 1(2)).
Conclusion
Because on these undisputed facts,[4] there can be no doubt that the ultimate beneficiaiy of the claim was and remains an insurance company, partial judgment in favor of defendant The Massachusetts Insurers Insolvency Fund, is ALLOWED, and judgment shall enter in favor of Defendant on Plaintiffs claim for reimbursement of the $200,000 settlement payment.

The Fund moves with respect to the $200,000 settlement amount only, and not with respect to the approximately $72,000 in defense costs.

These record facts are taken from the Ellis Affidavit filed in opposition to the Motion. The Fund explicitly denies on the merits policy coverage for St. Paul’s claims against Ellis. The court takes judicial notice of public record facts with respect to prior proceedings only, for purposes of this Motion, and makes no findings on any other facts which may be disputed. Accordingly the court is not converting the Motion to one pursuant to Mass.R.Civ.P. 56. Jarosz v. Palmer, 436 Mass. 526, 530 and n.2 (2002).

Pilón’s Case, 69 Mass.App.Ct. at 173; Dufresne’s Case, 51 Mass.App.Ct. at 88-89; Ferrari, 9 Mass.App.Ct. at 486-87.

Ellis argues in opposition that discovery could add something to this mix. The court finds the factual record complete and undisputed for purposes of the issue before it, and thus finds no additional facts could change the Fund’s entitlement to judgment as a matter of law.