268      458 Mass. 268 (2010)

Massachusetts Care Self-Insurance Group, Inc. *v.* Massachusetts Insurers Insolvency Fund.

## Massachusetts Care Self-Insurance Group, Inc. *vs.* Massachusetts Insurers Insolvency Fund.

Suffolk. September 8, 2010. - November 12, 2010.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Workers' Compensation Act,* Insurer. *Massachusetts Insurers Insolvency Fund. Insurance,* Insolvency of insurer. *Practice, Civil,* Summary judgment. *Statute,* Construction. *Words,* "Covered claim," "Insurer."

A claim of a workers' compensation self-insurance group, established under G. L. c. 152, §§ 25E-25U, against an insolvent insurer was not a "covered claim" within the meaning of G. L. c. 175D, § 1(2), eligible for payment from the Massachusetts Insurers Insolvency Fund, where such a workers' compensation self-insurance group was a member of the insurance industry whom G. L. c. 175D was not intended to benefit. [270-282]

Civil action commenced in the Superior Court Department on August 21, 2007.

The case was heard by *Paul E. Troy,* J., on motions for summary judgment.

The Supreme Judicial Court granted an application for direct appellate review.

*George C. Rockas (Young B. Han* with him) for the plaintiff.

*Gregory P. Deschenes (Joseph C. Tanski* with him) for the defendant.

Spina, J. This case requires us to determine whether a claim filed with the Massachusetts Insurers Insolvency Fund (Fund) by a workers' compensation self-insurance group is a "[c]overed claim" within the meaning of G. L. c. 175D, § 1 (2). Massachusetts Care Self-Insurance Group, Inc. (Mass Care), a workers' compensation self-insurance group established under G. L. c. 152, §§ 25E-25U, sought recovery from the Fund in respect of certain excess and reinsurance policies issued by Mass Care's insolvent insurer, Reliance National Indemnity Company (Reliance). The Fund denied the claim. In response, Mass Care filed

a declaratory judgment action in the Superior Court that was resolved on cross motions for summary judgment. The judge ruled that the Reliance policies are not "direct insurance" and are therefore outside the scope of guaranty fund coverage. The judge also concluded that Mass Care is an "insurer" for purposes of G. L. c. 175D, § 1 (2), and, as a result, Mass Care's claim falls within an exclusion to the definition of "covered claim." Declaratory judgments entered stating that "(1) [t]he . . . claim is not a covered claim; and (2) [t]he Fund is not required to pay the . . . claim or any future amounts incurred thereunder by [Mass Care]."

Mass Care appealed and we granted its application for direct appellate review. We affirm, but on somewhat different grounds from those of the motion judge, and hold that, because it is a member of the insurance industry, a claim filed by Mass Care is not a covered claim within the meaning of the statute.

1. *Facts.* There are no material facts in dispute. Mass Care is a not-for-profit workers' compensation self-insurance group organized under G. L. c. 152, §§ 25E-25U, incorporated under G. L. c. 180, and approved by the Commissioner of Insurance. It presently consists of thirty-nine member employers engaged in the business of providing nursing home care, long-term care, and assisted residential living in the Commonwealth.

The Fund is a "statutorily mandated, nonprofit, unincorporated association of all insurers writing certain kinds of direct insurance in the Commonwealth . . . . available to settle certain unpaid claims which arise out of and are within the coverage of an insurance policy issued by an insolvent insurer." *Wheatley* v. *Massachusetts Insurers Insolvency Fund*, 456 Mass. 594, 596-597 n.4 (2010), quoting *Barrett* v. *Massachusetts Insurers Insolvency Fund*, 412 Mass. 774, 776 (1992). The Fund is obligated to pay covered claims against an insolvent insurer (up to $300,000 per claim) in place of that insurer. G. L. c. 175D, § 5 (1) (*a*) & (*b*). See *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, 418 Mass. 486, 489 (1994).

On December 14, 1995, Susan Gorski, a registered nurse then employed by East Longmeadow Nursing Home (Longmeadow), was injured in the course of her employment. Longmeadow was a member of Mass Care as of December 14, 1995, and at all

relevant times. Pursuant to a Massachusetts workers' compensation and employers' liability coverage certificate issued by Mass Care to Longmeadow, Mass Care is obligated to to "pay promptly when due the benefits required of [Longmeadow] by the workers' compensation law." Longmeadow therefore sought workers' compensation coverage for the Gorski claim from Mass Care. Between January, 1996, and December, 2005, Mass Care paid more than $273,000 on the claim.

At the time of Gorski's injury, Reliance had issued two insurance policies (Reliance policies) to Mass Care — a "Specific Excess Workers' Compensation and Employers' Liability Policy" identifying Mass Care as the insured and a "Cover Note of Reinsurance" identifying Mass Care as the reinsured company. Both Reliance policies contain a $250,000 per accident retention that has been exceeded by the Gorski claim. Reliance was adjudged insolvent in October, 2001, and the Fund took over the administration of Reliance's claims pursuant to G. L. c. 175D. In December, 2005, Mass Care requested that the Fund reimburse it for those payments on the Gorski claim that exceeded its retention under the Reliance policies.

The Fund denied the reimbursement request and Mass Care instituted the present action. Mass Care has requested a declaration that "[t]he Gorski claim is a covered claim pursuant to G. L. c. 175[D], § 1," while the Fund has sought a declaration that "[t]he claim submitted to the Fund by [Mass Care] relating to Susan Gorski is not a covered claim under G. L. c. 175D."

2. *Discussion.* Because this case was decided on cross motions for summary judgment with no dispute as to all material facts, one of "the moving part[ies] is entitled to judgment as a matter of law." *Augat, Inc.* v. *Liberty Mut. Ins. Co.*, 410 Mass. 117, 120 (1991). The judge ruled that the statutory definition of "covered claim" excludes Mass Care's claim, which Mass Care alleges is error. The issue before us is therefore one of statutory interpretation that we review de novo. *Costa* v. *Fall River Hous. Auth.*, 453 Mass. 614, 620 (2009), quoting *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006).

Mass Care can be entitled to payment from the Fund only if its claim is a covered claim within the meaning of the statute. G. L. c. 175D, § 5 (1) (*d*) (Fund shall "adjust, compromise,

settle and pay all covered claims . . . and shall deny all other claims"). Chapter 175D defines "[c]overed claim," in relevant part, as "an unpaid claim . . . which arises out of and is within the coverage of an insurance policy to which this chapter applies" and that does not include "any amount due a reinsurer, insurer, insurance pool or underwriting association." G. L. c. 175D, § 1 (2). As with all terms defined in c. 175D, however, the definition of covered claim is elastic such that it is given its defined meaning "unless the context clearly requires otherwise." G. L. c. 175D, § 1.

The question presented, whether Mass Care's claim is a covered claim, is therefore broader than the subsidiary points regarding "direct insurance" and the definition of "insurer" that were presented to the judge below and have been briefed and argued on appeal. We find it unnecessary to address the "direct insurance" issue but do consider it useful to review our prior case law and the "insurer" issue before reaching the grounds on which we ultimately decide this case.

This is not the first time in the Fund's forty years of operation that parties have come before the courts seeking further definition of the term "covered claim." In *Ferrari* v. *Toto*, 9 Mass. App. Ct. 483, 485-486 (1980), the first such case, the Appeals Court found itself "faced with the question . . . whether the exclusion of amounts due an insurer from claims for which the Fund must pay is limited to Fund member insurers or whether 'the context clearly requires otherwise' and the exclusion extends to segments of the insurance industry which are not participants in the Fund." The Appeals Court considered that, in addition to insurers, "[a]n insurance pool or underwriting association would not fit in the c. 175D definition of 'insurer' as a member insurer, and the class referred to in the exclusion provision must, in context, mean something more, i.e., insurers beyond members insurers." *Id.* at 486. The reasoning of the Appeals Court thus rested on the scope of "the class referred to in the exclusion provision" rather than the definition of the word "insurer." *Id.* We granted further appellate review and agreed, stating that the Appeals Court correctly concluded that "the claim was not a 'covered claim' because it was for an amount due an insurer within the meaning of G. L. c. 175D, § 1 (2)." *Ferrari* v. *Toto*, 383 Mass. 36, 37 (1981). While intending to "agree with the

Appeals Court's reasoning and conclusion," *id.*, our paraphrasing may have had the unintended effect of redirecting the thrust of the Appeals Court's analysis from the scope of the exclusion provision to the definition of the word "insurer."

We again considered G. L. c. 175D, § 1 (2), in *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, 418 Mass. 486, 487-488 (1994) (*Ulwick*), where a police officer employed by the city of Melrose was struck and injured by an automobile insured by American Mutual Insurance Company. The city, as required by G. L. c. 41, §§ 100 and 111F, paid medical costs and lost wages to the officer subject to reimbursement should the injured officer secure recovery from a third party.[1] *Id.* at 488-489. The officer also sought recovery from the driver and owner of the vehicle that struck him. *Id.* at 487. American Mutual initially undertook the defense but, following its insolvency, the Fund assumed the obligation. *Id.* at 487-488. The Fund argued that because the city acted as a self-insurer, "the court should treat Melrose as an insurer" for purposes of the exclusion provision. *Id.* at 489. The question accordingly was framed as whether the definition of the word "insurer" should be "expanded" and the mode of analysis was set forth in those terms. We said, "Expansion of the explicit definition of the word 'insurer' may be justified only when, and to the extent that, the context of the statute clearly requires such expansion in order that the statute be internally consistent and consistent with the obvious legislative objective in enacting it." *Id.* at 489. By a divided court, we held that the city was "outside the insurance industry" and not, therefore, the type of entity that might justify the expanding of the definition of "insurer" under c. 175D. *Id.* at 490-491.

Perhaps as a result of *Ulwick*'s focus on the single word "insurer" within the exclusion provision rather than on the provision as a whole, the arguments of the parties and the decision of the judge below focus on whether the definition of the word "insurer" as used in G. L. c. 175D, § 1 (2), should be expanded. As noted above, this is a subsidiary point in the larger question whether Mass Care may file a covered claim. The "insurer" analysis was dispositive on the motions for summary judgment

---

[1]The city eventually assigned this recovery right to the injured officer. *Ulwick* v. *Massachusetts Insurers Insolvency Fund*, 418 Mass. 486, 491 n.2 (1994).

and consideration of this point illuminates the crucial issues of Mass Care's structure and function. Accordingly, we address the Fund's request to expand the definition of "insurer" before reaching the grounds on which we ultimately decide this matter.

There is a good argument to be made that, as the term is generally used, Mass Care is an insurer. See Black's Law Dictionary 879 (9th ed. 2009) ("insurer" is "[o]ne who agrees, by contract, to assume the risk of another's loss and to compensate for that loss").[2] The record demonstrates that Mass Care and its members enter into a coverage certificate that describes itself as "a contract of liability coverage" and that provides that Mass Care will "pay promptly when due the benefits required of [the member] by the workers' compensation law." Under an indemnity agreement Mass Care's members "agree[] to pay the premiums, assessments and [any] entry fee" required in exchange for "workers' compensation and employers' liability coverage." In addition to accepting risk in exchange for premium, Mass Care also undertakes many of the operations ordinarily associated with the transaction of the insurance business. Mass Care administers, investigates, settles, and pays workers' compensation claims. Where required, Mass Care hires and supervises legal counsel on behalf of its member employers. Mass Care also offers customary risk management services and inspects members' workplaces for purposes of insurability and premium determination while offering recommendations to employers that "may help reduce losses." Further, workers' compensation self-insurance groups did not exist in 1970 when G. L. c. 175D was enacted, so their exclusion from the definition of "insurer" is unsurprising. See G. L. c. 175D, inserted by St. 1970, c. 261 (establishing Fund); G. L. c. 152, §§ 25E-25U, inserted by St. 1985, c. 572 § 36 (authorizing creation of workers' compensation self-insurance groups). If the statutes were otherwise silent on the topic, we might conclude that Mass Care should be deemed to be an "insurer" for the purposes of G. L. c. 175D, § 1 (2), and affirm this case for the reasons set forth in the decision on summary judgment.

[2]A similar definition prevailed in 1970 when G. L. c. 175D was enacted. See St. 1970, c. 261 (establishing Fund); Black's Law Dictionary 943 (rev. 4th ed. 1968) (insurance is "[a] contract whereby, for a stipulated consideration, one party undertakes to compensate the other for loss on a specified subject by specified perils. The party agreeing to make the compensation is usually called the 'insurer' . . .").

Mass Care draws our attention, however, to the statutes under which it is established. See G. L. c. 152, §§ 25E-25U. There are two relevant provisions addressing the status of workers' compensation self-insurance groups as insurers. The earlier provision states:

> "A workers' compensation self-insurance group that is issued a certificate of approval by the commissioner shall not be deemed to be insurers or insurance companies and shall not be subject to the provisions of the insurance laws and regulations of the commonwealth except as otherwise provided herein. Workers' compensation self-insurance groups shall be subject to all provisions of this chapter and all regulations promulgated hereunder governing the conduct of insurers with respect to the payment of workers' compensation benefits, and shall be subject to all fees, fines, penalties and assessments levied upon insurers for failure to comply with the claim procedure of this chapter." G. L. c. 152, § 25E, inserted by St. 1985, c. 572, § 36.

The following year, the definition of "[i]nsurer" in c. 152 was amended to include the following sentence:

> "The term 'insurer' as used in this chapter, except where used to refer to regulation of insurance companies by the division of insurance, and except where used in [§§ 65A and 65C], shall include where applicable a workers' compensation self-insurance group established pursuant to [§§ 25E-25U], inclusive." G. L. c. 152, § 1 (7), as appearing in St. 1986, c. 662, § 5.

The first clause of the quoted portion of § 25E states that workers' compensation self-insurance groups shall not be deemed to be insurers while the second clause of the sentence makes clear that the purpose of this prohibition is to prevent such groups from being subject to the traditional framework of insurance regulation. The next quoted sentence of § 25E then makes applicable to the workers' compensation self-insurance groups certain consumer protection laws and regulations applicable to workers' compensation insurers. In the quoted portion of § 1 (7), the Legislature approaches the issue from the opposite direction, stating that workers' compensation self-insurance groups are deemed

458 Mass. 268 (2010)           275

Massachusetts Care Self-Insurance Group, Inc. *v*. Massachusetts Insurers Insolvency Fund.

to be insurers except that they shall not be subject to the traditional framework of insurance regulation or required to participate in workers' compensation residual markets. The underlying purpose of both statutory sections is clearly to establish workers' compensation self-insurance groups that act much like traditional workers' compensation insurers but are exempt from the corporate regulations applicable to traditional insurance companies. G. L. c. 152, §§ 1 (7) and 25E.

The potential dissonance or circularity in defining the word "insurer" as including Mass Care (as § 1 [7] appears to do) and prohibiting Mass Care from being deemed an "insurer" (as § 25E appears to do) could be viewed as ambiguity, but as Mass Care correctly points out, the two sections do not have equal scopes. Under § 1 (7), "the [t]erm 'insurer' *as used in this chapter* shall include where applicable a workers' compensation self-insurance group" (emphasis added). G. L. c. 152, § 1 (7). In contrast, § 25E prohibits such groups from being "deemed to be insurers" without any language limiting the "no deeming" provision to c. 152. It is possible that the language in § 25E sweeps more broadly than the specific aim of the Legislature. When construing a statute, however, "[w]e begin with the language of the statute itself and 'presume, as we must, that the Legislature intended what the words of the statute say.' " *Commonwealth* v. *Young*, 453 Mass. 707, 713 (2009), quoting *Collatos* v. *Boston Retirement Bd.*, 396 Mass. 684, 687 (1986). Because the Legislature has stated in G. L. c. 152, § 25E, that workers' compensation self-insurance groups "shall not be deemed to be insurers or insurance companies" we cannot conclude that the context of such groups' claims in c. 175D "clearly requires" that they be deemed to be insurers.[3]

---

[3]Moreover, even if G. L. c. 152, § 25E, did not sweep so broadly, the structure of G. L. c. 175D is such that it would be difficult to expand the definition of "[i]nsurer" to include Mass Care without causing mischief in other portions of the statute. If the definition of "insurer" in G. L. c. 175D, § 1 (5), were expanded to include it, Mass Care could be required to become a member of the Fund and could be required to pay assessments. G. L. c. 175D, § 3 (requiring "all insurers" to be members) and § 5 (1) (c) (permitting Fund to assess "insurers"). It is clear from G. L. c. 152 that this was not intended. See, e.g., G. L. c. 152, § 25R (establishing a separate insolvency scheme for workers' compensation self-insurance groups).

Even if the word "insurer" were expanded solely for purposes of defining

Insurers, however, are not the only category of entities whose claims are not eligible for payment under G. L. c. 175D, § 1 (2). The exclusion provision prevents reinsurers, insurers, insurance pools, and underwriting associations from recovering from the Fund. G. L. c. 175D, § 1 (2). Workers' compensation self-insurance groups are not among the listed entities. *Id.* Few inferences can be drawn from this omission, however, because the thing omitted did not exist at the time the list was compiled. See St. 1985, c. 572, § 36 (establishing workers' compensation self-insurance groups); St. 1970, c. 261, § 1 (establishing Fund and listing excluded claimants). Further, where the elastic clause of G. L. c. 175D, § 1, requires that we consider expanding the meaning of the exclusion provision the "general tenet of statutory construction . . . that the 'statutory expression of one thing is an implied exclusion of other things omitted from the statute' " is inapplicable. *Commonwealth* v. *Perry,* 455 Mass. 1010, 1011 (2009), quoting *Commonwealth* v. *Ronald R.,* 450 Mass. 262, 266 (2007). We think the better course is to follow the reasoning of the Appeals Court in *Ferrari* v. *Toto,* 9 Mass. App. Ct. at 486, and determine whether the legislative purpose and statutory context require that Mass Care be included in "the class referred to in the exclusion provision." See *Ulwick, supra* at 489 (legislative purposes and statutory context are appropriate guides to analysis).

"The obvious legislative purpose in establishing the Fund . . . is to benefit members of the public, individuals and entities . . . which are outside the insurance industry, from losses due to the insolvency of a member of that industry." *Id.* at 490-491. If Mass Care is a member of the insurance industry it would, accordingly, be inconsistent with legislative purposes to permit it to file a covered claim. *Id.*

---

"covered claim," structural difficulties would arise. The word "insurer" appears more than once in G. L. c. 175D, § 1 (2). Expansion of the definition of the word "insurer" in the exclusion provision would accomplish the intended result, but any such expansion in the remainder of the definition would conflict with G. L. c. 152, § 25R. Two definitions for the same word therefore would be necessary in a single section, in contravention of the general rules of statutory interpretation. See *Beeler* v. *Downey,* 387 Mass. 609, 617 (1982) ("where words are used in one part of a statute in a definite sense, they should be given the same meaning in another part of the statute"); *First Nat'l Bank* v. *Bernier,* 50 Mass. App. Ct. 756, 759 (2001) (same).

By statute, membership in Mass Care is an alternative to the purchase of a workers' compensation insurance policy from a traditional insurer. See G. L. c. 152, § 25A (1). Mass Care's product, the provision of workers' compensation benefits to employees of its members, is the same statutorily defined product provided by traditional insurers. *Id.* By selling the same product, Mass Care competes with traditional insurers in the market for workers' compensation coverage. Further, as described above, Mass Care provides its members with the same range of services traditionally provided by members of the insurance industry. Most tellingly, although it is expressly not an insurer, Mass Care is "subject to all provisions of [c. 152] and all regulations promulgated [there]under governing the conduct of insurers with respect to the payment of workers' compensation benefits, and shall be subject to all fees, fines, penalties and assessments levied upon insurers for failure to comply with the claim procedures of [c. 152]." G. L. c. 152, § 25E. The application of these regulations to Mass Care evidences legislative awareness that Mass Care would be engaging in the same business as traditional insurers and that identical consumer protections would therefore be necessary. *Id.* Considering this statutory context, we conclude that Mass Care is a member of the insurance industry whom c. 175D is not intended to benefit. See *Ulwick, supra.*

In reaching the conclusion that Mass Care is a member of the insurance industry, we find support in the out-of-State cases cited by the parties. In the context of their own idiosyncratic statutes these cases address the question whether a workers' compensation self-insurance group is an "insurer" for purposes of filing guaranty fund claims. We follow a different line of inquiry but find it instructive that each of these cases analyzes whether the self-insurance group (group) at issue is in the business of selling "insurance." See *Iowa Contrs. Workers' Compensation Group* v. *Iowa Ins. Guar. Ass'n*, 437 N.W.2d 909, 916 (Iowa 1989) (*Iowa Contrs.*) ("The joint and several liability provision . . . materially distinguishes the arrangement from traditional forms of insurance"); *Louisiana Safety Ass'n of Timbermen-Self Insurers Fund* v. *Louisiana Ins. Guar. Ass'n*, 17 So. 3d 350, 358 (La. 2009) ("the [group] was an insurer" because it "undertook to indemnify its members for the full amount of workers' compensation claims allowed . . . and the members

agreed to pay premiums and assessments"); *Maryland Motor Truck Ass'n Workers' Compensation Self-Insurance Group* v. *Property & Cas. Ins. Guar. Corp.*, 386 Md. 88, 100-101 (2005) (*Maryland Motor Truck*) (if "the self-insurance agreement at issue constitutes an 'insurance contract' . . . [group] is clearly an 'insurer,' as its sole raison d'etre and its only business is to enter into that kind of contract"); *South Carolina Prop. & Cas. Ins. Guar. Ass'n* v. *Carolinas Roofing & Sheet Metal Contrs. Self-Insurance Fund*, 315 S.C. 555, 559 (1994) ("We hold that since the Roofers Fund engages in a 'kind of insurance,' it is an insurer . . . and therefore its claim is not covered by the Act"). Only the *Iowa Contrs.* decision held that the self-insurance group was not providing insurance and this rests, in part, on the determination that the "joint and several liability provision" underlying a workers' compensation self-insurance group "materially distinguishes the arrangement from traditional forms of insurance." *Iowa Contrs., supra.*

The *Maryland Motor Truck* decision distinguished *Iowa Contrs.*, noting that the joint and several liability structure (which is balanced by the possibility of dividends accruing to the employer members) is substantially similar to the structure of an assessment mutual insurance company and is therefore compatible with traditional notions of insurance. *Maryland Motor Truck, supra* at 102-103. We agree. In addition, the risk identified by the Iowa court, that insolvency will result in members being liable for the group's losses, differs from traditional insurer insolvencies (absent Fund protection) only in that losses are spread amongst the members rather than falling directly on the policyholder suffering each loss. See G. L. c. 152, § 25R ("In the event of a liquidation . . . the commissioner of insurance shall levy an assessment on its members . . . to discharge all liabilities of the group . . .").[4] That Mass Care's organizing statutes (e.g., G. L. c. 152, § 25G [1] [i] [requiring that groups utilize indemnity agreement jointly and severally binding group and its members]) enunciate this principle rather than it being

---

[4]Indeed, for this reason it might be held that Mass Care's members engage in a more significant form of risk transference and spreading than policyholders of a traditional insurance company whose risks cease to be spread and transferred following an insurer insolvency.

458 Mass. 268 (2010)                                           279

Massachusetts Care Self-Insurance Group, Inc. *v.* Massachusetts Insurers Insolvency Fund.

implicit in the guaranty fund statute does not render the transaction between the group and its member something other than insurance. With a different corporate structure, Mass Care provides its members with the same product sold by the workers' compensation insurance industry. It is therefore appropriate to consider Mass Care a member of that industry.

In addition, the legislative purposes underlying c. 175D are fulfilled without permitting Mass Care to file a covered claim. The underlying injury suffered by Gorski resulted in a claim for workers' compensation benefits. Gorski, the injured employee, will receive those benefits whether Mass Care recovers from Reliance, recovers from the Fund, or receives no recovery at all. Longmeadow, Gorski's employer, is similarly protected from liability to Gorski whether Mass Care successfully prosecutes its claim or not. See G. L. c. 152, § 23 (employee's acceptance of compensation "constitute[s] a release to the insured of all claims or demands at common law, if any, arising from the injury"). While Mass Care may be required to increase the premium it charges its members if the claim is not covered by the Fund, no insolvency loss falls directly on a person outside the insurance industry. There is, accordingly, no person outside the insurance industry who is faced with an unpaid claim that would implicate the purposes of the Fund. See *Ulwick* v. *Massachusetts Insurers Insolvency Fund,* 418 Mass. 486, 490-491 (1994). See also *id.* at 492 (Wilkins, J., dissenting) ("The Fund [and the public] should be a last resort source of protection, as the Legislature intended").

A significant inequity would arise, however, if Mass Care were permitted to seek recovery from the Fund by filing covered claims. The Fund is "obligated to the extent of the covered claims against the insolvent [member insurers]." G. L. c. 175D, § 5 (1) (*a*). Member insurers are then assessed for those Fund obligations.[5] G. L. c. 175D, § 5 (1) (*c*). Over a reasonable period of time, the cost of Fund assessments is then passed through to

---

[5]Member assessments are not merely the sum of all covered claims. Additional factors such as Fund expenses increase the amount to be assessed while recoveries from sources such as the estate of the insolvent insurer reduce the amount to be assessed. See G. L. c. 175, § 180F, fifth par. (2) (claims presented by Fund in Massachusetts insolvency receive Class II priority); G. L. c. 175D, § 5 (1) (*c*) (describing components of assessments and manner in which they are allocated).

policyholders of the assessed insurers in the form of increased premiums. G. L. c. 175D, § 13. Where policyholders of traditional (solvent) insurers must pay for covered claims filed following insolvencies, it is not unreasonable for them to expect coverage from the Fund should their insurer become insolvent. Chapter 175D achieves this equitable and consistent result by providing that the universe of assessed insurers is the same as the universe of insurers whose insolvency will trigger Fund obligations. G. L. c. 175D, § 5 (1) (*a*) and (*c*) (limiting both Fund obligations and assessments to insurers that are members of Fund). Cf. G. L. c. 152, § 25R (establishing separate insolvency scheme for workers' compensation self-insurance groups).

In contrast, Mass Care's member employers are spared the cost of paying for Fund obligations because Mass Care is not assessed and therefore need not increase premium in respect of such assessments. G. L. c. 175D, §§ 5 (1) (*c*) and 13. The resulting cost advantage over employers insured through traditional insurers is offset by the absence of Fund coverage should Mass Care become insolvent. See G. L. c. 152, § 25R. This is a consistent and equitable result. If Mass Care were permitted to file covered claims, however, the cost of paying Mass Care's claims would be assessed by the Fund against member insurers and eventually flow through to policyholders of such insurers in the form of higher premiums. G. L. c. 175D, §§ 5 (1) (*c*) and 13. This flow necessarily would go in only one direction because traditional insurers unquestionably are barred from filing claims with the Fund. G. L. c. 175D, § 1 (2). The result of a covered claim filed by Mass Care therefore would be a subsidy from policyholders of traditional insurance companies to those employers securing coverage through Mass Care. There is nothing in the relevant statutes that suggests the Legislature intended this inconsistent and inequitable result.

Finally, Mass Care has drawn our attention to the model acts promulgated by the National Association of Insurance Commissioners (NAIC). Chapter 175D was patterned on the Post-Assessment Insurance Guaranty Association Model Bill (model act) adopted by the NAIC. *Clark Equip. Co.* v. *Massachusetts Insurers Insolvency Fund*, 423 Mass. 165, 167 n.2 (1996). Mass Care argues that we should consider the present form of that

model act as persuasive evidence of legislative intent. As reported by Mass Care, the current model act "excludes any amount due an 'insurer' " from the definition of "covered claim" but would not include Mass Care within the definition of "insurer." Mass Care discusses only the definition of "insurer" and we are left to conclude that, in drafting the model act, the NAIC implicitly supports the right of workers' compensation self-insurance groups to file covered claims.

NAIC model acts that the Legislature has taken no action on may, at most, provide guidance as to the present course of regulatory thinking. Mass Care's argument is unavailing, however, because it appears to have either relied on an outdated edition of the NAIC Property and Casualty Insurance Guaranty Association Model Act or omitted citation of relevant portions. In its relevant entirety, and following amendments in 2008, the model act now states that a " 'covered claim' shall not include . . . (c) Any amount due any reinsurer, insurer, insurance pool or underwriting association, health maintenance organization, hospital plan corporation, professional health service corporation or *self-insurer* . . ." (emphasis added). 1 Proceeding of the NAIC at 493 (2008), cited in III NAIC Model Laws, Regulations and Guidelines 540-5 (2009). The term "[s]elf-insurer" is then defined to mean "a person that covers its liability through . . . a group self-insurance program."[6] 1 Proceeding of the NAIC at 495, cited in III NAIC Model Laws, Regulations and Guidelines, *supra* at 540-7. The NAIC's present policy guidance therefore supports our conclusion that Mass Care should not be classified as an insurer but that it should be precluded from filing a covered claim.

---

[6]While self-insurance groups are "lumped together" with self-insurers for purposes of the NAIC's model guaranty fund act, we note that Mass Care is not a true self-insurer. That term can be used loosely to mean mere noninsurance (see *California Plant Protection, Inc.* v. *Zayre, Corp.*, 39 Mass. App. Ct. 627, 631-632 [1996]); more strictly to refer to an entity that guards against its own risks by assessing such risks and establishing reserves (see 1 G. Couch, Insurance § 1:4 at 1-12 [3d ed. rev. 2009]); or within the context of workers' compensation insurance, where licensure is required for an employer to retain its own risks (see G. L. c. 152, § 25A [1]). None of these meanings applies to Mass Care, which assumes the risks of others in exchange for premiums. Mass Care's existence cannot be disregarded in favor of the underlying employers because, although the Legislature has deemed it not to be an "insurer," Mass Care has not been deemed to be a pure fiction.

For these reasons, we hold that the context of this claim requires that the definition of "covered claim" within G. L. c. 175D, § 1 (2), exclude "any amount due" a workers' compensation self-insurance group such as Mass Care. We expressly do not reach the question of direct insurance and do not address Mass Care's request for attorney's fees. Because we concur in the result reached, we affirm the grant of summary judgment and the declaratory judgement entered.

*So ordered.*